160 So.2d 426 (1964)
Mrs. Maude Steele CLARKE (Deceased) Clem S. Clarke (Sole Plaintiff), Plaintiff-Appellant,
v.
The GOWEN SANATORIUM, INC., et al., Defendants-Appellees.
No. 10100.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1964.
Simon, Carroll, Fitzgerald & Fraser, Shreveport, for appellant.
Wilkinson, Lewis, Woods & Carmody, Shreveport, for appellees.
Before GLADNEY, AYRES, and BOLIN, JJ.
BOLIN, Judge.
Plaintiffs, mother and son, brought suit for damages for personal injuries sustained by Mrs. Clarke and related medical expenses incurred by Clem S. Clarke as the result of a broken hip suffered by Mrs. Clarke, then 82 years of age, when she fell from her bed while a patient in defendants' sanatorium. Made defendants were Dr. Gowen and The Gowen Sanatorium, Inc. Prior to trial Mrs. Clarke died from causes unconnected with the fall and her son, as sole surviving heir, prosecuted the action. From judgment in defendants' favor plaintiff appeals.
Suit was predicated upon two premises: first, that Dr. Gowen, operator of defendant corporation had agreed to furnish normal nursing home care for Mr. Clarke's mother with the additional promise that she would not be left alone unless restrained so as to prevent her from attempting to get out of bed alone; second, that the employees of the sanatorium failed to exercise reasonable and prudent care for the safety and well-being of Mrs. Clarke.
*427 In a brief written opinion the lower court found the evidence failed to substantiate Mr. Clarke's allegation that Dr. Gowen had contracted to furnish constant attendance for plaintiff's elderly mother or the alternative allegation that Dr. Gowen's staff was negligent in allowing Mrs. Clarke to fall from her bed. On appeal plaintiff specifies as error the lower court's failure to take into consideration or to find that Dr. Gowen had agreed "that Mrs. Clarke would not be left alone unless restrained so as to prevent her from being able to get out of bed alone." (Emphasis added.) Further specification of error was the trial court's failure to find defendants negligent in not taking adequate precautions for Mrs. Clarke's safety and that such negligence was a proximate cause of her injury.
Mrs. Clarke was suffering from physical and mental senility at the time she was admitted to defendant sanatorium. Her son had cared for her in his home for a number of months prior thereto and she had become such a burden he sought a place where she would be attended by professionals.
Testimony of the sanatorium's employees reflects Mr. Clarke had discussed his problem with Dr. Gowen and Mrs. Ward, the registered nurse in charge of nursing personnel at the hospital, and it was decided "sitters" would be kept with Mrs. Clarke from 8 a. m. until 5 p. m., and from 9 p. m. until 7 a. m. The care from seven until eight o'clock in the morning and from five until nine o'clock in the evening would be handled by the regular staff. The cost of any extra attendants to care for Mrs. Clarke was to have been borne by Mr. Clarke. The lower court concluded: "Such an arrangement is inconsistent with Mr. Clarke's contention that there was a contractual obligation assumed by the defendants to keep a perpetual watch over Mrs. Clarke."
However, since plaintiff urges the agreement was to restrain Mrs. Clarke when she was unattended we have examined the testimony of Mr. Clarke and Dr. Gowen relative to this aspect of the arrangement. Mr. Clarke testified he had inquired specifically of Dr. Gowen what means would be used to restrain his mother should she be unattended. He stated Dr. Gowen told him about a net that could be placed over the bed so the patient could not get out. Opposing this testimony was that of Dr. Gowen, who, although he admitted the hospital had such nets, stated the use of a restraining net in a case of this kind was not an approved procedure in the medical profession and was in fact used only on violent cases because of the frightening effect on elderly patients. Dr. Gowen further testified he had told Mr. Clarke he would use the net to restrain Mrs. Clarke "only if he considered it necessary." He said he advised Mr. Clarke the hall nurse could not sit in the room and Mr. Clarke replied, "* * * well, that is a risk we have to take."
There was further testimony by Dr. Gowen that Mrs. Clarke was placed under mild sedation; that he visited her twice a day; and that there was nothing abnormal about her behaviour or demeanor which would indicate the need for restraint other than the use of the hospital bed with side rails.
Under our interpretation of the testimony we are convinced there was no agreement to restrain Mrs. Clarke and plaintiff's contention that there was a breach of such agreement is without merit.
Turning to the allegation of negligence we find the evidence shows it was while the staff nurse had momentarily left Mrs. Clarke to go for the breakfast tray that the latter fell from her bed and suffered a fractured hip. The bed was a regulation hospital bed with raised sides from which a patient would not "roll" but would have to climb over to get out unless the side was lowered. The nurse, who attended Mrs. Clarke on the morning in question as well as the preceding mornings, testified she customarily let the rail down and carried Mrs. Clarke to the bathroom *428 when necessary. The nurse also had to feed her and to adjust her in bed in order for her to be comfortable. She further stated the guardrail was up on the morning of the accident and her observance of the patient gave her no reason to believe Mrs. Clarke would or could get up alone. It is conceded the hospital is not an insurer of the safety of its patients and that the standard of care is such as would be reasonable in the light of the patron's physical and mental condition. On this issue our examination of the record reveals no evidence warranting a conclusion contrary to that of the lower court.
Having found no error on the part of the lower court, either on the contractual issue or that of general negligence, the judgment is affirmed at appellant's cost.
Affirmed.