216 So.2d 108 (1968)
Curtis M. KILLGORE et al., Plaintiffs-Appellees,
v.
ARGONAUT-SOUTHWEST INSURANCE COMPANY, Defendant-Appellant.
No. 11084.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1968.
Rehearing Denied December 3, 1968.
*109 Simon, Carroll, Fitzgerald & Fraser, Shreveport, for appellant.
Meadors, Atkins & Meadors, Homer, for appellees.
Before GLADNEY, BOLIN and PRICE, JJ.
GLADNEY, Judge.
In this action brought under the survivorship provisions of Civil Code Article 2315, the children of Mrs. Cora Killgore seek recovery of damages for personal injuries sustained by their mother while a patient in the Homer Memorial Hospital. Argonaut-Southwest Insurance Company, the liability insurer of the hospital, is named defendant. From the judgment rendered in favor of plaintiffs in the sum of $7,775.80 the defendant has appealed.
For cause of action the plaintiffs allege negligence on the part of the hospital in failing to require someone to look out for the safety of Mrs. Cora Killgore on a continuous basis; and in failing to provide adequate guard rails on the side of the bed occupied by Mrs. Killgore. In the assignment of written reasons by the trial judge he found the hospital was negligent on both counts.
Mrs. Cora Killgore was admitted to the Homer Memorial Hospital on October 8, 1965 at the request of her treating physician, Dr. Grover C. Black, Jr., of Homer for treatment of acute pleurisy and pneumonia. At the time the patient was 88 years of age, was not ambulatory, and had been confined to a wheel chair for several months. She became a ward patient in the hospital and occupied a room with one or more other patients.
During the early morning hours of October 12, Audrey Johnson and Mary E. Mason, two nurses on duty at the hospital, heard the sound of a fall and an outcry from Mrs. Killgore and immediately went to her room where they found her lying on the floor beside her bed. Shortly before this occurred both nurses had checked the patient and had observed that she was sleeping. Although Mrs. Ruby Killgore had spent a considerable number of hours at the bedside of Mrs. Killgore, no member of the family was present at the time of the fall. As a result of falling to the floor the patient sustained a fracture of the right hip for which surgical correction was required. After recovery from her original illness and from the surgery for the hip fracture Mrs. Killgore returned to the home of one of her sons where she resided until her death on February 13, 1966, her death being caused by conditions not related to her fall.
Mrs. Killgore, despite her age, was described by the hospital attendants, Dr. *110 Black, and members of her own family as an alert and understanding person. She was fully capable of using the signal device on her bed to summon a nurse to attend to her needs. As hereinafter shown by the evidence, at the time she fell from her bed it was equipped with full length side rails which were raised in an up position. She afterwards told Mrs. Johnson that she attempted to climb over the bed rail. Although some of the plaintiffs testified they informed the nursing supervisor, Claudia Miller, their mother had a bad habit of rolling out of the bed, none requested that extra nurses or sitters be engaged. As we understand the testimony of Dr. Black, he could not definitely remember making a request that someone be in constant attendance at the bedside; but that he usually discussed such matters with the family and the nursing staff. Upon her admission and thereafter Mrs. Killgore was in fact attended a greater portion of the time by her daughter-in-law, Mrs. Ruby Killgore. At other times she was visited by members of the family. However, when she fell no one was in attendance.
The evidence discloses there was no clear directive to the hospital from the patient or a member of her family or from Dr. Black, her attending physician, that there be an attendant at all times. The record reveals that when extra nurses' aids (sitters) are required for a hospital patient the engagement of such extra services is a contractual obligation of the patient, or of relatives or friends. The practice at the Homer Hospital and other hospitals in the area was that continuous care for a patient will only be provided through a special agreement to that effect. It is customary for the hospitals located in the same area to suggest the names of available sitters and not to provide a member of their own staff.
A private hospital is not an insurer of a patient's safety. Clarke v. Gowen Sanitorium, Inc., La.App., 160 So.2d 426 (2nd Cir. 1964); DeBlanc v. Southern Baptist Hospital, La.App., 207 So.2d 868 (4th Cir. 1968). The general rule as to the degree of care owed by a hospital to a patient is stated in 41 C.J.S. Hospitals § 8 (3) pp. 349-350:
"The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. The measure of duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. * * * On the other hand, a private hospital is not an insurer of a patient's safety, and the rules as to the care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."

[41 C.J.S. § 8, pp. 349, 350]
Our conclusion is that there was no breach of duty by the hospital in failing to require someone to look out for the safety of Mrs. Cora Killgore on a continuous basis.
Plaintiffs have entirely failed to substantiate their allegations that the hospital was negligent in failing to provide adequate guard rails on the side of the bed occupied by Mrs. Killgore. The great weight of evidence is to this effect and supported by the testimony of Audrey Johnson, Mary Mason, Claudia Miller, Evelyn Baker, Gloria Maddry and Felton Alexander, the maintenance engineer.
For the reasons hereinabove set forth, the judgment appealed from is annulled and set aside and the demands of plaintiffs are rejected at their cost.
Reversed.