219 So.2d 251 (1969)
Louis LeBLANC et al., Plaintiffs-Appellants,
v.
MIDLAND NATIONAL INSURANCE CO. et al., Defendants-Appellees.
No. 2587.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
*252 J. Lyle DeBellevue, and Edwards, Edwards & Broadhurst, by Nolan J. Edwards, Crowley, for plaintiffs-appellants.
V. V. Young, Crowley, for defendants-appellees.
Before TATE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
Four children of Clobule LeBlanc, a 79-year-old patient at Morgan's Nursing Home in Crowley, Louisiana, brought this action for damages for loss of love and affection and for physical pain and suffering and mental anguish incurred when he was burned on August 11, 1965, while smoking a pipe at the nursing home. The burns eventually led to his death on September 24, 1965. Named as defendants in the action are Medrick Morgan, d/b/a Morgan's Nursing Home; Midland National Insurance Company, the public liability insurer of Morgan's Nursing Home; and a fifth child of the decedent who had refused to join in the petition with the four plaintiffs.
Originally petitioners sought $63,276.15 for loss of love and affection and pain and suffering; but this amount was later reduced to $10,000.00 by stipulation between counsel as to the limits of the policy in force between Morgan's and Midland National Insurance Company, and no recovery was to be sought against Medrick Morgan, d/b/a Morgan's Nursing Home.
After hearing and overruling of an exception of vagueness filed by defendant, the matter was set for trial. After a hearing on the merits judgment was rendered in favor of defendants and against plaintiffs. From this judgment plaintiffs have appealed contending the trial court erred in failing to rule: (1) that Morgan's Nursing Home knew of the dangerous nature of decedent's smoking habits, and that the decedent was not able to safely engage in this activity; (2) that Morgan's Nursing Home was under a duty to either prohibit or carefully supervise the smoking activities of decedent; and (3) that the injuries sustained by decedent and his subsequent death were caused by the negligence of Morgan's Nursing Home. Defendants answered the appeal contending that the ruling of the trial court was correct and should be affirmed at appellants' costs.
Vincent Pizzolatta was called to the witness stand on cross-examination and testified he was a licensed practical nurse at Morgan's Nursing Home in charge of nursing care under the supervision and guidance of the doctor. He said he saw the decedent daily, and that he ambulated well, would walk in the yard, sit in the patio, fed and dressed himself, and was of fair mind for one of his age. Although there was some confusion as to the exact occurrence of the accident, the testimony of Mr. Pizzolatta, who extinguished the flaming clothes of the decedent with a blanket, indicated that a hot match must have been placed in the box of matches used by the decedent, thus igniting his clothes. When asked whether he was given any instructions whatsoever as to watching decedent when he was smoking, Pizzolatta replied:
"A. We were instructed on bed patients never to light a cigarette and leave them stay until they finish smoking, and, then, move it. Now, ambulatory patients most of their familiesI cannot say Mr. LeBlanc's family requested itbut usually felt it made the patient nervous if we did not let them have their own light. Now, if we would have had to bring Mr. LeBlanc a light everytime he wanted a light, there would have been no nursing care given in the Nursing Home to the other patients because he was a constant smoker, but usually as a whole, and to the best of my knowledge, the family usually would want patients in Mr. LeBlanc's condition to have their *253 matches where it would not upset them or make them nervous at his age."
Medrick Morgan was placed on the witness stand under cross-examination and testified he owned and operated the nursing home and he received $150.00 per month from Welfare and Social Security for the care of Mr. LeBlanc. He responded as follows when asked as to the condition under which people were allowed to smoke on the premises:
"A. Yes, we allow our patients to smoke when they are capable of handling their own affairs such as Mr. LeBlanc. He was out on the patio and the grounds, and, of course, Mr. LeBlanc we had notified the family to take this pipe away from him and the matches, too, because we felt the way he did it was dangerous to the premisesthe way he would strike matches and so on.
"Q. You all had taken his pipe away at one time before and the matches?
"A. Yes, sir.
"Q. Why were they given back to him?
"A. He reported to the familyhe was pretty well upset about it, and he reported this to the family, and the family demanded that we give it back to him. They said their father had smoked all his life and they wanted him to have the privilege of smoking."
In the recent case of Killgore v. Argonaut-Southwest Insurance Company, 216 So.2d 108 (La.App. 2 Cir.1968), the court stated the duty which a hospital owes to its patients thusly:
"A private hospital is not an insurer of a patient's safety. Clarke v. Gowen Sanitorium, Inc., La.App., 160 So.2d 426 (2nd Cir.1964); DeBlanc v. Southern Baptist Hospital, La.App., 207 So.2d 868 (4th Cir.1968). The general rule as to the degree of care owed by a hospital to a patient is stated in 41 C.J.S. Hospitals § 8(3) pp. 349-350:
"`The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. The measure of duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. * * * On the other hand, a private hospital is not an insurer of a patient's safety, and the rules as to the care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen.'"
We feel the trial judge correctly held in favor of the defendants. The impracticality of requiring continuous personal supervision of all the patients of the nursing home throughout the day is readily apparent when considering the rather small pecuniary compensation (including room, board and laundry), the number of employees on the shift (approximately ten), and the number of patients in the home. In reality, whenever assistance was needed by the patients, a buzzer would sound in the office, and a light would appear over the door of the room in which assistance was needed.
Plaintiffs in this case have failed to sustain the burden of proof imposed upon them. The nursing home performed all that could be expected of it, and even went further by attempting to remove the smoking materials from decedent, which attempt proved futile when the children of decedent demanded his smoking materials be returned to him. Under the circumstances of this case there was no duty imposed on the nursing home to watch the decedent any more closely than was done.
For the reasons assigned the judgment of the district court is affirmed at appellants' costs.
Affirmed.