254 So.2d 170 (1971)
Mrs. Ruby Eddins COLLIER, Plaintiff-Appellant,
v.
AMI, INC., et al., Defendants-Appellees.
No. 11674.
Court of Appeal of Louisiana, Second Circuit.
October 12, 1971.
Rehearing Denied November 16, 1971.
Lunn, Irion, Switzer, Johnson & Salley, by Jack E. Carlisle, Jr., Shreveport, for plaintiff-appellant.
Mayer & Smith, by Paul R. Mayer, Shreveport, for AMI, Inc., and Heritage Manor of Vivian, Inc., defendants-appellees.
Before AYRES, BOLIN, and PRICE, JJ.
Rehearing En Banc Denied November 16, 1971.
AYRES, Judge.
This is an action in tort wherein plaintiff, Mrs. Ruby Eddins Collier, a 74-year-old paying guest in the Heritage Manor Nursing Home of Vivian, Louisiana, seeks to recover damages for injuries and the accompanying pain, suffering, mental anguish, and humiliation sustained as a result of an alleged criminal assault committed *171 upon her in the aforesaid home during the early morning hours of October 24, 1970. Made defendants are the Heritage Manor of Vivian, Inc., owner and operator of the nursing home, and AMI, Inc., owner of one hundred percent of the capital stock of the named corporate owner.
Plaintiff was allegedly attacked in her room in the nursing home at approximately 3:00 in the morning. Whether from a criminal assault or from other causes, plaintiff unquestionably sustained serious and painful injuries. Bruises and a few scratches were noted on her neck, face, throat, and mouth, with a blood-letting laceration on her face. Also noted were numerous bruises, scratches, and contusions near and in the entrance to the vagina. She also sustained a tear, or laceration, of the vaginal wall extending the entire length of the vagina and into the peritoneal cavity. External as well as internal bleeding resulted; a large hematoma or blood clot formed in the abdomen from internal bleeding. Surgery was necessary to remove the hematoma, which removal also required the removal of an ovary. Before recovery, the surgical incision became infected, and plaintiff was hospitalized for 40 days.
Negligence charged to the nursing home as a basis for this action consisted of a failure to take necessary and proper precautions to insure plaintiff's safety, and in not taking appropriate action or care to prevent deterioration of her condition. Plaintiff did not receive medical attention until seven hours following her injuries.
The case was tried before a jury which returned a verdict in favor of the defendants. From a judgment in accordance therewith, rejecting plaintiff's demands, she prosecutes this appeal. The basis of the verdict appears to have been a failure to establish fault or negligence on the part of the nursing home or its employees.
Plaintiff first complains that the verdict of the jury was hastily reached without proper consideration of the facts established in the record. From this it is reasoned the verdict should be accorded scant, if indeed any, consideration at all. In this regard it is pointed out that the jury deliberated only 10 to 15 minutes before reaching its verdict, whereas the trial consumed five days. Without more proof, this is not necessarily a showing of prejudicial error. During the taking of evidence, over a five-day period, each of the jurors had the opportunity to consider and weigh in his own mind the testimony as it was presented. In the absence of a showing to the contrary, it must be presumed that the jury performed its duty. However, even if the jury failed to give proper consideration to the evidence presented, and the record does not disclose such failure, this failure ceases to be of any momentous importance on appeal. Appellant courts of this State are charged with the responsibility of determining, from the record, irrespective of what the jury may have found, what facts have and have not been established. Henson v. Travelers Insurance Company, 228 So.2d 667 (La.App., 1st Cir. 1969); Johnston v. Bearden, 127 So.2d 319, 326-327 (La.App., 2d Cir., 1961cert. denied).
Our own conclusions and findings of fact have been reached only after a painstaking review of the voluminous record. As heretofore noted, the basis of the jury verdict and the judgment of the court appear to have been predicated upon a finding that plaintiff failed to establish fault or negligence on the part of the nursing home or of its employees. The correctness of the disposition of the case thus made may be determined only from a review of the record now before us.
Plaintiff complains of an alleged failure of the nursing home and of those responsible for its operation to provide reasonable and proper security for the guests or residents of the home, particularly in view of the fact that purported prowlers had entered the premises in months preceding plaintiff's alleged assault, and more particularly that neither *172 the regional supervisor nor the manager of the home notified the night nurse in charge of the home of that fact. The testimony with reference to this complaint is to the effect that during the year or more preceding the incident with which we are now concerned it was established that someone, thought to have been neighborhood children at play, in all probability entered the attic of the home, most likely through an open screen in the eaves of the building. Noise was heard in the attic, and the next day a downward bulge or sag in the ceiling was noted in the room serving as a beauty salon. This incident was reported to and was investigated by the police. Nothing of importance was discovered. The ceiling was repaired and the screen replaced. One inclined to mischief would hardly attempt to enter the home through the attic from which there was no entrance or passageway shown to the living or bedroom areas. The failure of those in charge of the home to recall this incident, after the lapse of more than a year, and to report it to the night nurse is of no importance or significance. Failure in this respect has no probative value or force so far as establishing negligence on the part of the home or its failure to provide reasonable and adequate security for the protection of its guests.
A more serious charge of negligence is directed to the failure of Mrs. Ruth Rhoads, a licensed practical nurse, who was in charge of the home the night plaintiff sustained her injuries, to promptly notify plaintiff's physician of her injuries to obtain medical assistance.
A review of the events as they transpired and came to Mrs. Rhoads' attention is pertinent in resolving the question of her negligence.
Mrs. Juanita French, an aid in the nursing home, in response to a signal from plaintiff's room, met plaintiff as she was coming into the hall. This was about 3:30 in the morning. Plaintiff was returned to her room, whereupon Mrs. French, noting blood on plaintiff's face and in the commode, summoned Mrs. Rhoads, who made the same observation. Plaintiff at the time complained of severe pain in her abdomen, and related a story to the effect that she had experienced a bad dream and needed an injection for the relief of pain. Mrs. Rhoads made an effort to determine where plaintiff was bleeding. Dr. James A. Spring, plaintiff's physician, was called at 3:45 a. m. He was on a house call at the time; however, he returned to his home and five minutes later responded to Mrs. Rhoads' call. On the occasion of that call, Mrs. Rhoads informed the doctor of her findings, noted above, and that plaintiff was bleeding from the lower pelvic area and was complaining of abdominal pain. Dr. Spring ordered that plaintiff be given an injection of Vistaril, a tranquilizer, which was done. Mrs. Rhoads again called Dr. Spring about 5:00 a. m. When the doctor was informed that plaintiff was complaining of severe pain in the bladder or the adjacent area, and that plaintiff could not urinate, he directed the insertion of a catheter. Thirty minutes later Dr. Spring called, inquired about plaintiff's condition, and was informed that plaintiff's urine was clear of blood, indicating that plaintiff was not bleeding from the bladder or kidneys but from some other source. Mrs. Rhoads was then informed by Dr. Spring that he would see plaintiff "in the morning."
With respect to the above events, there was noted, on plaintiff's chart, this entry:
"Collier up to B.R. Had mod. amt. of Bleeding in CommodeScratches on face & neck! Appeared to be vag. bleeding. Dr. Spring notified. B/P 130/68 P. 100 Vistaril 50 Mgm IM. 5:00 Cont. complaint about pain in lower abd. Req. more med. Foot of bed elevated. 5:05 B/P 100/60 Dr. Spring notifiedFoley cath. ordered. Urine clear."
Mrs. Rhoads gave Dr. Spring the benefit of all the facts she knew with respect to plaintiff's condition. The doctor's findings *173 on his later examination, about 10:30 a. m., were consistent with Mrs. Rhoads' reports. Absent from the reports was any reference to the laceration of plaintiff's vagina. Mrs. Rhoads did not have that information, nor was she trained, authorized, or permitted to make an examination that would have disclosed that fact.
Mrs. Eva Hicks, who was also a licensed practical nurse, came on duty about 7:00 a. m. About 8:00 a. m., she examined plaintiff's genital area and found no active bleeding.
Mrs. Diana Fox, a registered nurse and director of the nurses at the home, upon reporting for duty, examined plaintiff about 8:30 a. m. She found no bleeding but saw evidence of external trauma in the genital area. Plaintiff related to Mrs. Fox a story that she had had a nightmare wherein she envisioned someone choking her. Upon reporting to Dr. Spring's office about 10:30 a. m., as he had directed, plaintiff told Dr. Spring that she had experienced a terrible nightmare about someone attacking, choking, and assaulting her sexually. An examination then made disclosed a tear, or laceration, in the vaginal wall, whereupon plaintiff was admitted to a local hospital. Her condition became worse, whereupon she was transferred to a Shreveport hospital and placed under the care and attention of Dr. William C. Kalmbach, Jr., a specialist in obstetrics and gynecology. The laceration, or tear, of the vagina was found to extend through the wall into the abdominal cavity and was actively bleeding at the time. Through internal bleeding the hematoma increased to basketball size and was, as heretofore noted, removed through surgery.
Mrs. Elva Watson, a registered nurse with 37 years' experience and a nurse surveyor for the Louisiana State Department of Hospitals, whose duty was to evaluate nursing homes on a basis of the type of care they render, testified the home of the defendants complied with and met all the requirements of the United States Department of Public Welfare as well as those of the Louisiana State Department of Hospitals as prepared and published under the authority of LSA-R.S. 40:2009.1 et seq., and, in her estimation, the home was in the highest category of nursing homes. She knew of no home with security guards or of any regulation anywhere requiring them. Her testimony was to the further effect that this home exercised that degree of care, skill, and diligence practiced by nursing homes generally in that community and area.
The agreement under which plaintiff entered the nursing home contains this pertinent provision:
"The management of this home has agreed to exercise such reasonable care toward this person as his or her known condition may require, however this home is in no sense an insurer of his or her safety or welfare and assumes no liability as such."
In Killgore v. Argonaut-Southwest Insurance Co., 216 So.2d 108, 110 (La.App., 2d Cir. 1968), we had occasion to point out that a private hospital is not an insurer of a patient's safety. There we cited: Clarke v. Gowen Sanatorium, Inc., 160 So.2d 426 (La.App., 2d Cir. 1964); De Blanc v. Southern Baptist Hospital, 207 So.2d 868 (La.App., 4th Cir. 1968). Also noted was the general rule as to the degree of care owed by a hospital to a patient. There we quoted, as we do now, from 41 C.J.S. Hospitals § 8, pp. 349-350.
"The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. The measure of duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. A hospital is liable for want of ordinary *174 care, whether from incompetency of a nurse or failure in duty by a fully qualified nurse. The duty of a hospital toward one for whom it undertakes to care cannot, by agreement with a third person, be reduced below that which the law generally exacts. The duty of care imposed on a hospital extends to safeguarding the patient from dangers due to mental incapacity, and to the use of any instrumentality producing pain. On the other hand, a private hospital is not an insurer of a patient's safety, and the rules as to the care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."
Although the cited case and the quote from C.J.S. refer to the duty owed by private hospitals to their patients, we perceive of no sound reason or basis why the same rules should not apply to private nursing homes in determining the care owed their guests.
Whatever delay plaintiff experienced in obtaining medical attention is not attributable to any fault or negligence of the home or to those in charge of its management and operation. All the information the home or its employees had or could obtain was promptly transmitted to plaintiff's doctor. The nurses and aids were most diligent in carrying out his orders and instructions.
Only one violation of the regulations has been disclosed, and that relates to the opening of the window to the extent of some three or four inches in plaintiff's room. Plaintiff admitted that she had opened it, knowing that it was against the regulations.
We are constrained to hold, as the jury found and the trial court approved, that the defendant home and its employees were free from fault or negligence.
Hence, the judgment appealed is affirmed at plaintiff-appellant's costs.
Affirmed.