365 So.2d 537 (1978)
Erastus BRYANT, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 6718.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1978.
Rehearing Denied January 10, 1979.
Writ Refused February 23, 1979.
*538 John L. Van Norman, III, Lake Charles, for plaintiff-appellant.
Pugh & Boudreaux, Charles J. Boudreaux, Lafayette, William N. Nolen and William R. Tete, Lake Charles, for defendant-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
CUTRER, Judge.
This appeal presents a question of whether the trial judge committed error by granting the defendant's motion for a directed verdict in this malpractice suit against St. Paul Fire & Marine Insurance Company, the insurer of Lake Charles Memorial Hospital.
Erastus Bryant, the father of Elijah Bryant, deceased, brought the suit alleging that Lake Charles Memorial Hospital (hereinafter referred to as Memorial), through its employees, including Dr. Arthur Rhoades, was negligent in the care rendered to his 26-year old son Elijah Bryant, causing his death. Plaintiff's son was admitted to the emergency room of Memorial for a gunshot wound and then later was placed in an ambulance to be transferred to Lafayette Charity Hospital for further treatment and surgery. En route to Lafayette the son died. Plaintiff sued St. Paul Fire & Marine Insurance Company (hereinafter referred to as St. Paul), the insurer of Memorial. St. Paul filed a third party demand against Hartford Accident & Indemnity Company, the insurer of Dr. Rhoades. Dr. Rhoades was the director of emergency services at Memorial.
At the close of plaintiff's evidence, St. Paul filed a motion for a directed verdict on the ground that the plaintiff failed to produce any expert testimony to establish the "community standards" of hospital practices in the area which could be used by the jury to determine whether there was a lack of proper care, skill and diligence by Memorial employees. The motion was also grounded upon the lack of evidence of the community standards for physicians. The trial court granted the motion for a directed verdict on those grounds. The court concluded that lack of such "community standard" testimony compelled a directed verdict. Plaintiff appealed.
The witnesses presented by the plaintiff in regard to the activities, examination, and *539 decisions made on the evening of April 16, 1975, in the emergency room of Memorial Hospital were as follows: Dr. Arthur Rhoades, Dr. Avery Cook, a pathologist, Mark Pleasant, a nursing assistant in the emergency room, Susan Zeringue, a registered nurse assigned to the emergency room, and Bert Billedeaux, an ambulance driver for Lake Charles Charity Hospital. Dr. Rhoades was called on cross-examination. The remaining witnesses were called on direct examination.
The facts briefly are as follows: On the evening of April 16, 1975, Elijah Bryant was admitted to the emergency room of Memorial Hospital in Lake Charles, Louisiana. Present were Dr. Rhoades, nursing assistants and technicians. Bryant had received a wound from a bullet which had entered the left rear portion of his rib cage. He was administered an I.V. and was examined by Dr. Rhoades. This physician concluded that the bullet had traversed the upper chest area. Bryant responded within a short time to the I.V. as his vital signs returned to approximately normal.
A call was made for a staff surgeon, Dr. Bennerscheidt, in order that he could examine Bryant and determine whether he should be admitted to Memorial. Dr. Bennerscheidt was not available at that time, however. Dr. Rhoades, as director of the emergency room, was not authorized to admit a patient to Memorial. Before Dr. Bennerscheidt arrived, Lake Charles Charity Hospital was called and was told to send an ambulance to transfer Bryant to Lafayette Charity Hospital. Bryant was in the emergency room a short time. The testimony ranges from 20 minutes to 1½ hours. The ambulance arrived with a driver but no attendant. Bryant was placed in the ambulance and died on the way to the Lafayette Hospital. The principal cause of death was internal bleeding.
Plaintiff's principal contentions are that Memorial, through its employees, was negligent in transferring Bryant without having him examined by a staff surgeon; that Memorial was negligent in not admitting Bryant for further care; that Memorial was negligent in authorizing the removal of Bryant by ambulance while in a serious condition; and that Memorial was negligent in releasing Bryant to be transferred in an ambulance without an attendant.
The first issue is whether it is necessary to establish community standards for hospitals in order that the jury may determine negligence of the hospital.
This court, in the case of Williams v. Sisters of the Incarnate Word of Galveston, Texas, 341 So.2d 1299 (La.App. 3rd Cir. 1977), set out the standard of care a hospital owes to its patients, wherein the court stated as follows:
"In the case of Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974), our Supreme Court has stated the duty of a hospital toward its patients as follows:
"`A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.'
"However, the hospital's duty has been traditionally limited by the jurisprudence, and the oft-quoted limitation has been recently reiterated in Goodeaux v. Martin Hospital, Inc., 333 So.2d 717 (La.App. 2d Cir. 1976):
`". . . On the other hand, a private hospital is not an insurer of a patient's safety, and the rules as to the care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."` (Emphasis added)
"See also Guidry v. State, Department of Hospitals, 317 So.2d 222 (La.App. 3rd *540 Cir. 1975), writ refused, 320 So.2d 904 (La.1975); LeBlanc v. Midland National Insurance Company, 219 So.2d 251 (La. App. 3rd Cir. 1969); Killgore v. Argonaut-Southwest Insurance Company, 216 So.2d 108 (La.App. 2nd Cir. 1968), and DeBlanc v. Southern Baptist Hospital, 207 So.2d 868 (La.App. 4th Cir. 1968)."
The standard of care enunciated above does not require the establishment of a "community standard" in order to make a determination of negligence of hospitals. The trial court was in error in its ruling in this regard.
Plaintiff relies, in part at least, on the negligence of Dr. Rhoades for recovery. Recent jurisprudence has developed making a change in the standard of care by medical specialists. While a discussion of this jurisprudence may not be necessary to this decision, we feel that such a change in this area should be pointed out for the benefit of the trial court in the retrial of this matter.
Dr. Rhoades testified that he was a physician specializing in traumatic and industrial surgery. This suit was tried in November, 1977. The trial court did not have the benefit of Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La. 1978), rehearing denied July 26, 1978, wherein the Supreme Court enunciated the standard of care of physician specialists by holding as follows:
"For the foregoing reasons, we hold that a medical specialist is required by La.Civil Code Articles 2315 and 2316, and La.R.S. 9:2794, to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by physicians within his medical specialty; that the plaintiff seeking to prove that a medical specialist failed to adhere to these standards of care or skill is not limited to expert medical testimony by witnesses practicing or familiar with the standards of care and skill within the defendant specialist's community or locality; and that, accordingly, the lower courts fell into error in the instant case by ruling that testimony pertaining to the standard of care or skill within the involved medical specialty could not be presented because of a locality rule.
"Accordingly, testimony of qualified experts, regardless of whether practicing within or familiar with the defendant doctor's locality is admissible to prove the degree of care ordinarily exercised and the degree of skill or knowledge ordinarily possessed by physicians within the involved medical specialty. However, evidence of the local facilities and resources available, as well as evidence of other pertinent local conditions, is also admissible and should be considered by the trier of fact in determining whether a physician exhibiting the care, knowledge and skill ordinarily exhibited by physicians within the involved speciality would have acted or failed to act in the manner of the defendant doctor at the time in question."
The effect of this ruling was to abolish the "locality" rule or "community standard" rule of physicians who are specialists. Since Dr. Rhoades is a specialist, the standard of care required of him would be determined according to the ruling in Ardoin.
In view of our conclusions, we find it unnecessary to make a determination of the remaining issues.
For these reasons, the judgment of the trial court is reversed and the case is remanded to the trial court for a new trial in accordance with the views expressed herein. Costs of this appeal are assessed to St. Paul Fire & Marine Insurance Company.
REVERSED AND REMANDED.