285 So.2d 363 (1973)
Dewey THIBEAUX, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellees.
No. 4337.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1973.
Rehearing Denied December 3, 1973.
Writ Refused January 4, 1974.
*364 J. Minos Simon, Lafayette, for plaintiff-appellant.
McBride & Brewster by Norman P. Foret, Lafayette, Roger C. Edwards, Abbeville, Davidson, Meaux, Onebane & Donohoe, Lafayette, for defendants-appellees.
Before FRUGE, SAVOY and DOMENGEAUX, JJ.
FRUGE, Judge.
This action arises out of a tort suit instituted by plaintiff, Dewey Thibeaux, against defendants, State Farm Mutual Automobile Insurance Company, Earl P. Broussard, individually, and as administrator of the estate of his minor son, James E. Broussard, and Firemen's Fund Insurance Company, for alleged injuries and damages sustained in an automobile accident which occurred on the evening of March 2, 1971.
Defendant, State Farm Mutual Automobile Insurance Company, filed a reconventional demand for monies paid to its insured because of damages to the insured's automobile. Defendant, Firemen's Fund Insurance Company, filed a motion for summary judgment and, alternatively, an exception of no right of action. The motion for summary judgment was sustained by reason of an exclusionary provision in the policy involved which specifically precluded coverage for James Eugene Broussard. The suit of Dewey Thibeaux against Firemen's Fund Insurance Company was thereby dismissed with full prejudice to all of the plaintiff's rights against said insurance company.
The First National Bank of Abbeville filed an intervention by way of an answer to the plaintiff's appeal in this court. Such intervention was based upon a prior judgment against Dewey Thibeaux and in favor of First National Bank obtained on the date of June 24, 1971. On October 20, 1971, an assignment and transfer was made by Dewey Thibeaux of a sum necessary to satisfy his prior obligation from any settlement of the personal injury claim in the instant suit.
Judgment was rendered in favor of the plaintiff on September 14, 1972, and the initial intervention in this suit was filed on the date of September 15, 1972. The First National Bank was, therefore, not a party to the original action and is unable to obtain relief in the status of appellee. Because of the untimely intervention, First National Bank's remedy was by appeal. Applicable statutory authority can be found in LSA-C.C.P. Articles 1091 and *365 2086, and Article 2133 is not applicable, First National Bank not being a proper appellee.
Jurisprudential authority for this position can be found in General Motors Acceptance Corporation v. Jordan, 65 So.2d 627 (La.App. 1st Cir. 1953), and in Louisiana Power & Light Company v. Charpentier, 165 So.2d 614 (La.App. 1st Cir. 1964), wherein it was held that an intervention may be filed only while suit is pending and before judgment in the main demand. Also, the Louisiana Supreme Court, in the case of Gorman v. Gorman, 158 La. 274, 103 So. 766 (1925), determined that an intervention may be decided only at the time the main action is decided. Also see LSA-C.C.P. Article 1033.
The trial on the merits was conducted before a twelve-man jury whose verdict was determinative of the negligence of the defendant and the lack of contributory negligence of the plaintiff. The plaintiff was awarded the sum of $15,000.00. Plaintiff subsequently sought additur and alternatively a new trial based upon inadequacy of the award and jury misbehavior. The jury was alleged to have illegally considered the assumed receipt of Social Security payments by plaintiff, when in fact, no evidence on this point had been presented. Both additur and a new trial were denied by the lower court. We affirm.
The injuries to the plaintiff allegedly arose from an automobile collision which occurred at the intersection of Charity and Lyman Streets in the City of Abbeville, Vermilion Parish, Louisiana, on the 2nd day of March, 1971, at approximately 7:15 in the evening. Plaintiff was traveling east on Charity Street (a four-lane) and had come to a stop at its intersection with Lyman Street. He was in the process of making a left-hand turn from the inside lane when defendant, James Eugene Broussard, struck the right rear of plaintiff's automobile. James E. Broussard had likewise been traveling east on Charity Street in the inside lane. He evidently failed to observe the plaintiff's vehicle before him at the intersection, and the rearend collision ensued.
Defendant attempted to demonstrate by his testimony that the plaintiff's rear lights were not functioning, making his car unlighted and non-apparent to drivers approaching from the rear. Defendant's testimony was overwhelmingly negated by that of the investigating officers, Captain Jimmie Bouton, and Officer Preston Trahan, as well as by that of an uninterested witness Warren D'Augereaux, Jr. These witnesses uniformly and conclusively testified to the illumination of the street by fluorescent light sources, being such as to make an automobile visible for several blocks notwithstanding the absence of illumination from the automobile's own tail lights.
We are in complete agreement with the judgment of the lower court predicated upon the jury's finding of negligence on the part of the defendant, James E. Broussard. It is obvious from the record that there were no intervening or mitigating circumstances. It is, therefore, determined that defendant was negligent in failing to operate his vehicle with the ordinary care and caution required under these circumstances.
By appeal, plaintiff has urged the inadequacy of the jury award as well as error on the part of the trial court in refusing plaintiff's motion for a new trial and motion for additur. Plaintiff has predicated these assertions on the evidence presented and alleged jury misconduct in consideration of this evidence. The issue as to jury misconduct will be dealt with prior to our consideration of the inadequacy vel non of the jury award.
The allegation of jury misconduct is founded upon post-trial testimony given in connection with the application for new trial provoked by plaintiff. Juror, Oliver Wright, testified that the receipt of Social Security benefits by the plaintiff was considered *366 by him in his deliberation as to the ultimate amount to be awarded the plaintiff. Mr. Wright further testified that, although he could not say that the receipt of Social Security payments was considered by the other jurors in arriving at their final award, he could say it was discussed in the presence of the other jurors. It is, therefore, asserted that the jury improperly behaved and thereby provided grounds for a new trial or, alternatively, additur, by reason of the grossness and inadequacy of the award made. Corroborative of plaintiff's position is the case of Doerle v. State, 147 So.2d 776, 782 (La.App. 3rd Cir. 1962), consistently followed to date and wherein the following was stated:
"Counsel for defendant contends that the award should be reduced drastically for the reason that plaintiff is receiving social security from the Federal Government and also is receiving a monthly payment for disability from an insurance company. We cannot take this into consideration in awarding damages in the instant case. It is well settled that the wrongdoer is not entitled to have the damages for loss of earnings and loss of earning power reduced by compensation or pension payments paid to the injured party from a collateral source to which the wrongdoer does not contribute."
It is noted that the plaintiff does not challenge the jury's decision as to liability, but only as to the adequacy of the final award. LSA-C.C.P. Article 1814 provides:
"A new trial shall be granted if it be proved that the jury was bribed or has behaved improperly so that impartial justice has not been done."
This article, in conjunction with LSA-C. C.P. Articles 1972 and 1973, provides relief by way of new trial for parties able to comply with their provisions.
This court is not disposed to interfere with the deliberations and determinations of juries when conducted under such circumstances that it can be safely assumed that impartial justice was achieved. While the consideration of Social Security benefits by juror Oliver Wright may have been improper, there is no evidence of record which would support anything stronger than an inference or speculation that the other eleven jurors actually considered Social Security benefits in reaching their determination. It is here noted that the concurrence of nine jurors is required in order to render any civil jury verdict (in the absence of stipulations to the contrary), and that in the instant case the verdict was ten to two in favor of the $15,000.00 award. Therefore, even considering Mr. Wright's vote to have been improperly predicated, it, when combined with the other two dissenting votes, would not prevent the verdict from validly standing as rendered.
The lower court is endowed with much discretion regarding applications for new trial and for additur, and we find in this case that there was clearly no abuse of its discretion. We feel that the plaintiff fully capitalized on the opportunity to present his case to a jury and was afforded his rightful day in court. We do not believe that the conduct complained of was such as to preclude the impartial administration of justice. Jury deliberations are founded upon the evidence as presented to the court and jury and upon the jurors' general knowledge and understanding thereof.
To enter the confidential sphere or realm of the jury in the instant case, would be to disturb the jury system as we know it. It would ultimately result in an unnecessary and destructive disruption of jury findings in future cases. This is not to say that this court will not intervene and overturn a jury award where there has been an actual showing of jury misbehavior such that impartial justice has not been done. We find the following excerpt from the case of Collier v. Ami, Inc., 254 So.2d 170, 171 (La.App. 2nd Cir. 1971), on point and expressive of our determination of this matter:
"However, even if the jury failed to give proper consideration to the evidence *367 presented, and the record does not disclose such failure, this failure ceases to be of any momentous importance on appeal. Appellant courts of this State are charged with the responsibility of determining, from the record, irrespective of what the jury may have found, what facts have and have not been established. Henson v. Travelers Insurance Company, 228 So.2d 667 (La.App. 1st Cir. 1969); Johnston v. Bearden, 127 So.2d 319, 326-327 (La.App. 2nd Cir. 1961 cert. denied)."
We now turn toward an examination of the record and an evaluation of the award. Plaintiff has asserted that he suffered a ruptured intervertebral disc in both the cervical and lumbar regions of the back and that an award of $15,000.00 for such an injury is grossly inadequate. In the assessment of plaintiff's medical condition, the testimony of four doctors was elicited.
Dr. Corbit LeBouf was the initial treating physician who first examined plaintiff on March 13, 1971, eleven days after the accident's occurrence. Dr. LeBouf found tenderness and spasms around the lower portion of the neck, pain over the lumbar area, and sciatic tenderness, as well as spasm in the buttock muscles. X-ray examination revealed a narrowing of the C-5, C-6 intervertebral disc space, and also what appeared to be some nerve impingement. Also apparent was cervical arthritic spurring and spurring in the lower back which was deemed to have been pre-existent to the accident.
Dr. LeBouf's opinion was that the plaintiff suffered from a cervical disc syndrome, or cervical neck syndrome, being what is normally referred to as a whiplash-type injury. He also believed that the plaintiff had a low back injury and intervertebral disc-narrowing at C-5, C-6, with a possible rupture of the disc. No neurological abnormalities were noted. Pain medication, muscle relaxants, and local heat treatments were prescribed. Plaintiff was also advised to avoid lifting heavy objects in performing his work.
On March 23, 1971, plaintiff was again examined by Dr. LeBouf, who at this time believed the plaintiff to be suffering from a low back strain and again found no neurological abnormalities. On March 23 and 27, 1971, plaintiff exhibited a worsening of the spasm in his neck. Physical therapy was prescribed and was undergone by plaintiff from March 27, 1971, through May 11, 1971. Plaintiff was sent to Dr. Fred C. Webre, an orthopedic surgeon, and was last seen by Dr. LeBouf on July 12, 1971. Dr. LeBouf's final medical opinion was that plaintiff suffered a strain in the neck and back, plus some disc involvement. Dr. LeBouf specifically said that he would certainly yield to the opinion of an orthopedic surgeon, and that this is why the plaintiff was sent to Dr. Webre.
Dr. Webre first examined the plaintiff on April 20, 1971, and found that rotation of the plaintiff's chin was voluntarily limited, that there was no sciatic tenderness, and plaintiff's reflexes were equal and physiologic. Plaintiff had full motion of his shoulders, elbows, wrists, and hands and there was no evidence of muscular weakness or atrophy in his upper extremities.
Dr. Webre reviewed the X-rays that had been previously taken by Dr. LeBouf on March 13, 1971. Dr. Webre found a narrowing of the C-5, C-6 interspace, with anterior spurring on the inferior margin of C-5 and the superior margin of C-6. On the flexion and extension views, there was apparently no motion at this interspace, whereas in a normal neck some motion would have been expected. These same X-rays revealed a slight calcification in the interspinous ligament at the C-6, C-7 interspace. There was no evidence of recent fracture, dislocation, or other bone or joint disease.
On July 1, 1971, plaintiff's condition was once again examined by Dr. Webre who found sciatic tenderness and prescribed a lumbosacral support. It was Dr. Webre's opinion that the plaintiff was disabled as *368 far as his back was concerned. Dr. Webre stated that he was not of the opinion that plaintiff suffered from a cervical ruptured disc, and that if he had been convinced of such an injury he would have recommended that plaintiff consult a neurosurgeon to operate on him. In his opinion, no hospitalization was necessary, no operation was indicated, and he felt that plaintiff would probably eventually return to work.
On September 8, 1971, upon the recommendation of his attorney, plaintiff went to and was examined by Dr. Blaise Salatich, an orthopedic surgeon. Dr. Salatich found a moderate cervical syndrome, a neurological abnormality in the lumbosacral area, and also had X-rays taken. The interpretation of the X-rays by Dr. Salatich revealed a narrowing of the C-5, C-6 and C-6, C-7 intervertebral disc spaces. This narrowing was considered an abnormality, and, in addition, arthritic spurring was found to exist on the C-5, C-6 cervical body, which spurring was found to impinge on a spinal nerve.
Dr. Salatich's opinion as to plaintiff's condition was expressed as follows: "A whiplash-type low back injury involving the ligamentous musculofascius structures of the lumbosacral region with possible lumbar intervertebral disc involvement, and residual disfunction and low back pain." A whiplash mechanism was considered to be the cause of the injury. A corset and a triple-adjustable plastic extension cervical collar were prescribed for the plaintiff.
On June 8, 1972, plaintiff was again examined and found incapable of doing body work, as it would significantly aggravate his neck. Dr. Salatich felt that it was a reasonable medical probability that the plaintiff would be permanently disabled. It is, however, of noteworthy importance that at at no time in the course of his testimony did Dr. Salatich ever specifically state that the plaintiff suffered from a conclusive disc injury in the nature of a ruptured or herniated disc.
On December 16, 1971, plaintiff was examined by Dr. Harper Willis, a specialist in psychiatry and neurosurgery. This examination revealed an absence of the Achilles reflex which is seen as well in sprains and strains as in disc injuries. It was the opinion of Dr. Willis that the plaintiff had a cervical disc involvement, that is, an injury or pathology to the disc at the cervical level. He recommended that a myelogram should be done and be done quickly. However, this advice was never heeded by the plaintiff and a myelogram was consequently never run.
It is noteworthy that Dr. Willis testified that, although a rear-end collision such as plaintiff sustained would possibly bring about an injury to a disc, as a reasonable medical probability such a rear-end collision would not be the essential cause of this type condition. Dr. Willis further testified that usually disc injuries result from heavy lifting or pushing up in some way or another, or by a diving action of some type, in which the injured party strikes his head and the neck itself is thereby compressed. However, Dr. Willis said that his findings were not that of a whiplash.
From the foregoing medical testimony, several facts have been established upon which we base our determination. First, Dr. LeBouf, the initial treating physician, although suspecting the possibility of a disc involvement, found no evidence conclusive of this suspicion and specifically testified that he would defer to the opinion of an orthopedic surgeon. Dr. LeBouf also testified that he last saw the plaintiff on July 12, 1971, and was of the impression that the plaintiff's condition had improved subsequent to that date; plaintiff never thereafter having returned to him for treatment.
Noteworthy revelations from the testimony of Dr. Willis seem to corroborate in part the plaintiff's allegation by establishing that the plaintiff's complaints were compatible with a disc injury. However, we give more weight to the doctor's opinion that it was not a reasonable medical *369 probability that the plaintiff's rear-end collision could be the essential cause of a ruptured disc, and further, the doctor's findings were not based upon any X-rays taken as a result of or in accordance with the plaintiff's sole examination by the doctor. It is also noted that the doctor's recommendation of a prompt myelogram administration was not heeded by the plaintiff.
The testimony of Dr. Salatich, while all encompassing in breadth, failed to present conclusive proof of the positive existence of a defective disc in the cervical or lumbar region. While Dr. Salatich provided an overwhelming amount of medical testimony, he at no time clearly stated that the plaintiff suffered from a ruptured disc and not from a whiplash-type injury. As to the medical status of the plaintiff's cervical spine, the determinations made by Dr. Salatich are in accordance with those findings made by Dr. Webre. Both doctors found a narrowing of the intervertebral disc spaces and arthritic spurring.
Lastly, we find the testimony of Dr. Fred C. Webre, an orthopedic surgeon, of most consequence. It was Dr. Webre's opinion that, although the plaintiff was disabled because of a back injury, there was no cervical ruptured disc, no operation was indicated and that plaintiff could probably eventually return to work.
We conclude from the foregoing medical evidence that, although there is some evidence which indicates the possible existence of disc involvement or rupture, it is more probable that the plaintiff has suffered from a severe back sprain in the lumbar and cervical regions which has been possibly complicated by pre-existing arthritis. We conclude that the trial court and jury made their determination as to the physical severity of plaintiff's injuries in regard to his pain and suffering and legitimately exercised their discretion in accordance with established law in advancing their ultimate award.
Plaintiff's salary had been in the neighborhood of $500 per month for the three years preceding the year of his injury and was approximately $1,000.00 per month for the three months prior to his injury. The latter salary figure was admittedly unusual. Considering this in conjunction with the months plaintiff was unable to work and damage awards usually given for sprains and strains of the back, we find the jury's award to have been generous.
Having found that no manifest error was committed by the lower court or jury, we find that the substitution of our judgment is unwarranted and, for that reason, the lower court's award will be maintained. Our decision is in conformity with the recent and compelling jurisprudence of our State, expressed in the following cases: Theriot v. Transit Casualty Company, La. App., 265 So.2d 845; Miller v. Thomas, 258 La. 285, 246 So.2d 16; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149. We find cases cited by plaintiff in support of an increase in the award inapposite, all having involved proven herniated discs.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Plaintiff-appellant is to pay all costs of this appeal.
Affirmed.
DOMENGEAUX, J., concurs in the results.