PAVY, Judge.
Plaintiff sued Edward Quinn, Mrs. Daisy Bel Guidry and her insurer, Travelers Insurance Company, for injuries sustained when Quinn, acting as bartender in Mrs. Guidry’s lounge, threw a bottle at plaintiff. The case was tried by a jury which made special findings of fact. When the jury’s special findings were returned, the trial judge ordered a dismissal of plaintiff’s suit against all defendants. After hearings on that issue, the trial judge rendered judgment rejecting the claim against Quinn, but awarding $9,350 to be paid by defendant Mrs. Guidry and her insurer. Plaintiff appealed the dismissal of his claim against Quinn. Mrs. Guidry and her insurer appealed the judgment against them. „
About mid-afternoon, plaintiff met an acquaintance, David Poche, and four of his companions in a lounge. Most of the group were teenagers or persons in their early twenties who were either in college or had just completed college studies. They had been drinking for some time. One of them had had eleven drinks. Defendant Quinn was a veteran seaman who entertained very strong views on certain subjects and was especially outspoken about them, particularly the race problem. He apparently afforded amusement to the college crowd around Lake Charles. The Poche group decided to seek him out and proceeded, along with plaintiff, to his former bar. This place had been closed for some time, and the group, thinking that Quinn would be at Mrs. Guidry’s place, proceeded there. As they entered the bar, Mrs. Guidry went to her living quarters which were built in the same structure as the bar. Quinn commenced to serve drinks to the group. The conversation was normal for about ten to fifteen minutes, at which time it turned to the race problem. All the parties were Caucasians. Suddenly, the conversation became loud and emotional, and at some point, Quinn threw a Sprite bottle at plaintiff. It hit plaintiff’s *77 beer bottle. Both bottles shattered and plaintiff received several substantial cuts about his face and head. Quinn claims that plaintiff was in the process of throwing his beer bottle at him (Quinn), and that his actions were in self-defense. Plaintiff denied attempting to throw at Quinn or making any such menacing movement.
Besides fixing the amount of damages, the jury found that plaintiff was struck by a bottle as a result of the intentional or negligent acts of Quinn, that Quinn acted in self-defense, that Quinn was acting as an employee of Daisy Bel Guidry at the time, that Daisy Bel Guidry was negligent, and her negligence was the proximate cause of the incident.[1]
Plaintiff’s counsel contends that the evidence is so overwhelming that Quinn was not acting in self defense that the jury’s finding of self-defense arose not from misjudgment, but from confusion or error in answering the interrogatories. He quotes a statement from the trial judge at a post-trial hearing expressing doubt as to how the jury made the finding of self-defense. Except for polling and certain types of extreme irregularities such as tampering, etc., the law does not allow any inquiry into the method or thought processes by which a jury reaches its verdict. See Thibeaux v. State Farm Mutual Automobile Ins. Co., La.App., 285 So.2d 363 (3rd Cir.1973). Any such determination would require a trial court factual inquiry, which was not had in this matter. Accordingly, there is no evidence supportive of plaintiff’s contention.
Further argument is made by plaintiff’s counsel that the self-defense finding did not include the question of whether Quinn used excessive force. In a post-trial proceeding, he sought to have that issue decided by the judge, but this was denied. The interrogatory propounded to the jury did not itself allude to the matter of excessive force. However, the charge clearly instructed the jury that one engaged in excessive force could not claim self-defense. Accordingly, we think the jury’s answer necessarily dealt with the issue of excessive force.
The more serious issue presented by this appeal is whether we can reverse the jury’s finding that Quinn acted in self-defense. We now review the various considerations pertinent to this determination.
Plaintiff was 32 years of age, had been married for several years, and was employed as a teacher. He had been periodically afflicted with a mental condition for some years. Defendant was about 50 years of age, a veteran seaman, and possessed strong feelings on the race issue. These *78 two had never known each other prior to the date in question.
Plaintiff and the five members of the Poche group all testified on his behalf. Defendant Quinn and Mrs. Guidry gave counter testimony. Two other patrons of the bar at the time were not called as witnesses. One. of these may have been friendly disposed towards Quinn.
As they entered the bar, the Poche group took seats on stools at the bar. Plaintiff first went to the juke box for a while apcj.'” then took a position at the bar, immediately to the right of the Poche group. The stronger trend of the testimony is that plaintiff was seated and not standing. According to Quinn and Mrs. Guidry, after some conversation between Quinn and plaintiff, plaintiff raised his beer bottle with his right hand and was throwing or had thrown it when Quinn threw the Sprite bottle. According to Quinn, plaintiff was eyeing him menacingly or threat-ingly. Mrs. Guidry (who claims to have been observing the bar from her living quarters) claims plaintiff’s eyes were blinking wildly. Apparently he had a facial tic. The plaintiff testified that his bottle was on the bar and his hands were not moving as if to lift it or otherwise. All the Poche group testified that plaintiff had not lifted his bottle or made any gesture which could be taken as an attempt to throw the bottle, or at least they did not see any such action.
The testimony shows that prior to the bottle throwing, there had been a general conversation involving all the patrons and particular conversations were going on between different patrons and those seated next to them. It is noted that all of the plaintiff’s witnesses were to his left and away from his right hand. All except the one immediately next to him had one or more persons seated between them and plaintiff. Generally, their attention was straight ahead or to their left.
There is some conflict as to the exact words used by plaintiff and Quinn in their outburst immediately preceding the violence. It seems that Quinn was running down the Negro race and stated he would serve plaintiff a “nigger” beer. Immediately prior to the violence, plaintiff supposedly stated that perhaps he (plaintiff) had Negro blood in his veins, and Quinn replied that he ought to go drink with them. We can conclude that the conversation was /such as would engender sufficient hostility in either to initiate violence, depending on their inclinations to such, their moods at the time and the extent to which these two personalities irritated each other.
Quinn claims that as he was turning or walking away from plaintiff, he perceived the commencement of the throwing gesture, that he immediately grabbed the Sprite bottle from the rear bar and hurled it, and that the bottles hit in midair. This explanation and other evidence pose serious questions of timing and the physical possibility of the incident occurring as Quinn claims. We have weighed all these non-credibility considerations but are unable to conclude that the question can be resolved other than by assessing the witnesses’ credibility. We particularly note that many of the descriptions of the parties’ actions, positions, etc., were probably clear to the jury but are meaningless to us from the record at hand. Accordingly, we do not feel that we can upset the jury’s finding as manifestly erroneous. This includes any possibility that Quinn had reasonable alternatives to throwing the bottle, such as turning his back, dodging or fleeing. Such questions were pecularily within the province of the jury. In Canter v. Koehring Co., La., 283 So.2d 716 (1973—Sup.Ct.), it was said:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must *79 give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
Having concluded that we must uphold the findings of self-defense on Quinn’s part, we now proceed to decide whether Mrs. Guidry’s liability must be affirmed on the basis of the jury’s finding that she was negligent.
The jury found Quinn was acting in the course of his employment with Mrs. Guidry and the rule of respondeat superior would be applicable. However, that rule does not render a master liable for the innocent acts of the servant any more than the servant himself could be held responsible. Here Quinn’s conduct was non-tor-tious. Respondeat superior only makes the master liable only to the extent that the servant acted tortiously but not greater or differently.
Plaintiff alleges Mrs. Guidry was negligent in hiring Quinn, who had a propensity to violence; in permitting Quinn to drink while on duty; in not restraining Quinn or taking steps to prevent him from becoming violent; by exposing her patrons to danger in that she should have known of the dangerous propensities of Quinn and by not providing adequate personnel to protect patrons. Except for the last one, none of these allegations would fasten liability on Mrs. Guidry, even if they were true. If Quinn himself did not offend, such failures of Mrs. Guidry are irrelevant for they are not proximate causes of the injury, that is, the tortious aspect or element of those failures did not contribute to a tortious result, but rather the failures themselves produced a non-tortious result, that is, the injurious consequences resulting from Quinn’s exercise of his right of self-defense.
The last specification of negligence does not relate specifically to Quinn and may have some potential toward liability if there were a duty on an owner of an establishment such as this to maintain peace-keeping personnel at all times. Counsel cites no authority for such, and we know of none. We do not think it would be proper to exact such a strict requirement for such an establishment. The evidence is overwhelming that this incident occurred too abruptly to be prevented even if there would have been peace-keeping personnel available, unless they would have prohibited any argument or discussion whatsoever in the place. This would have been impractical. Furthermore, any such protective personnel would have no right to prevent Quinn from acting in self-defense; The most such personnel could have accomplished would have been to prevent plaintiff himself from acting as the jury found that he did. But the protection is not for such purpose. It is to protect a patron from another’s tortious acts. Therefore, we conclude that any failures or negligent acts of Mrs. Guidry did not contribute in a legally significant way to plaintiff’s injuries and the award against her and her insurer must be eliminated.
Accordingly, the judgment of the district court is amended so as to dismiss the claim against Mrs. Daisy Bel Guidry and Travelers Insurance Company and, as amended, it is affirmed.
Plaintiff is to bear all trial and appellate costs.
AMENDED AND AFFIRMED.

. The verdict of the jury read as follows:

“VERDICT OE JURY

1. Was Thomas C. Morris struck by a bottle as a result of intentional or negligent actions of Edward F. Quinn?
ANSWER Yes
(Yes or No)
2. Did the actions of Edward F. Quinn in the incident involved in this suit constitute self-defense?
ANSWER Yes
(Yes or No)
3. Was Edward F. Quinn an employee or servant of Daisy Bel Guidry at the time of the incident involved in this suit?
ANSWER Yes
(Yes or No)
4. If Mr. Quinn was an employee or servant of Mrs. Guidry, was he acting within the course and scope of such relationship at the time of the incident involved in this suit? (If he was not such an employee or servant, you will not answer this question.)
ANSWER Yes
(Yes or No)
5. Was Daisy Bel Guidry guilty of negligence that was a proximate cause of the incident involved in this suit?
ANSWER Yes
(Yes or No)
6. What is the amount of the damages, if any, that were sustained by Thomas 0. Morris as a result of the incident involved in this suit?
ANSWER $9350