604 So.2d 1359 (1992)
Samuel Ray GREENE, Plaintiff-Appellant,
v.
Father Kermit ROY, et al., Defendant-Appellee.
No. 91-109.
Court of Appeal of Louisiana, Third Circuit.
July 8, 1992.
Writ Denied November 13, 1992.
*1360 Wade Mouton, Kaplan, for plaintiff-appellant.
Christovich & Kearney, Charles W. Schmidt, III, New Orleans, Domengeaux & Wright, Bob Wright, Lafayette, for defendant-appellee.
Before STOKER, CULPEPPER[*] and SALOOM[*], JJ.
WILLIAM A. CULPEPPER, Judge Pro Tem.
Plaintiff, Samuel Ray Greene, individually and on behalf of his four minor children, sues Father Kermit Roy, a Roman Catholic priest, alleging Roy had an illicit sexual affair with his former wife, while she was seeking marriage counseling from Roy. He alleged this affair resulted in the breakup of his marriage and caused great emotional damage to him and his children. Greene joins as defendants, Sister Francine Guillory, Bishop Gerald L. Frey, Vicar General Richard Von Puhl Mouton, Monsignor H.A. Larrouque, The Archdiocese of New Orleans, d/b/a Roman Catholic Church, The Roman Catholic Church for the Diocese of Lafayette, Holy Rosary Parish, and the Roman Catholic Church. He alleges that Sister Francine Guillory contributed to the termination of his marriage and that the Roman Catholic Church and its leaders were responsible for the actions of Father Roy and Sister Guillory under the theory of respondeat superior. Greene also alleges independent negligence by the church and its leaders in hiring and supervising Roy and Sister Guillory. He seeks recovery under theories of (1) negligence or strict liability; (2) clerical malpractice; and, (3) breach of contract. The defendants, other than Roy and Sister Guillory, filed a peremptory exception of no cause of action. The trial court sustained the exception and dismissed plaintiffs' suit. Plaintiffs appeal.
In Butler v. Reeder, 573 So.2d 1159 (La. App. 5 Cir.1991) the court states the law regarding the exception of no cause of action as follows:
As stated by this Court in Shafouk Nor El Din Hamza v. Bourgeois, 493 So.2d 112, 116 (5th Cir.1986):
"The peremptory exception of no cause of action raises the issue of whether any remedy is afforded by law for the particular grievance set forth by the plaintiffs.
* * * * * *
The purpose of the exception of no cause of action is to test the legal sufficiency of the pleadings. Well pleaded facts, as alleged in the petition, are taken as true, and if any reasonable construction of the facts could lead to possible legal recovery, the exception must be overruled.... The exception is triable solely on the face of the petition and any annexed documents.... No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action; it is only when the allegations of the petition establish that no relief can be granted under the law that the exception can be maintained." (Footnotes and citations omitted)

FACTS ALLEGED IN PLAINTIFFS' PETITION
Mr. Greene is suing on behalf of himself and his four minor children, seeking $4,550,000.00 for his damages and $2,600,000.00 for his children's damages. He alleges that Father Kermit Roy, while serving as assistant pastor of Holy Rosary Catholic Church in Kaplan, Louisiana, through deception and misuse of his priestly power, enticed Mrs. Greene into a sexual affair. In 1985 Greene asked Father Roy to counsel him regarding his marital problems. Father Roy declined because of his close relationship to the Greene family. Roy had counseled Mrs. Greene previously. Sister Guillory counseled Mrs. Greene throughout the year of 1985. She also counseled Mr. Greene. The Greenes physically separated on Holy Thursday in 1985.
*1361 Mr. Greene alleges that Father Roy and Sister Guillory were counseling Mrs. Greene throughout this period of trial separation. Also Father Roy was counseling Mrs. Greene during the period that Father Roy had refused to counsel Mr. Greene. Mr. Greene filed a suit for separation in the fall of 1985 and Mrs. Greene admitted herself into a chemical dependency unit in Lafayette. During the separation Mrs. Greene allegedly vacationed with Sister Guillory. Mr. Greene conducted an investigation and avers that he discovered Father Roy used his powers as a priest to win the affections of Mrs. Greene at a time when she was under great emotional distress. Mr. Greene alleges that Father Roy told Mrs. Greene that she did not need substance abuse treatment. He also avers that Father Roy had sexual intercourse with his wife the entire time he was assistant pastor for Holy Rosary Catholic Church.
Mr. Greene further asserted in his petition that Sister Guillory knew about the relationship between Father Roy and Mrs. Greene while she was counseling Mrs. Greene. He also alleges Sister Guillory told Mrs. Greene about her sexual past which left a strong impression on Mrs. Greene. Mr. Greene states that he learned the entire truth about Sister Guillory and Father Roy in December 1985, during confrontations while Mrs. Greene was receiving chemical abuse treatment.
Mr. Greene alleges that Father Roy's behavior and the Roman Catholic Church's disregard for his family's welfare and spiritual life has caused physical pain and mental, emotional and psychological suffering that will last forever because Mr. Greene was such a devout Catholic and totally trusted the church.
He alleges the Roman Catholic Church was negligent in failing to properly supervise Father Roy and Sister Guillory. He also alleges the church was negligent in appointing Father Roy as priest and then allowing him to continue his priestly duties when they should have known of his propensity to commit the sexual acts complained of. Mr. Greene also asserts the Roman Catholic Church is strictly liable to him under the doctrine of respondeat superior.
Mr. Greene pleads in the alternative that he is entitled to damages under the theory of clerical malpractice. He also alleges that he is entitled to damages for breach of contract because he supported the church and the defendants breached their contractual obligation by allowing the actions of Father Roy and Sister Guillory and not warning him that his wife was suffering from chemical dependency and mental instability.
Mr. Greene alleges he has had to undergo intense psychological counseling and his children need counseling also. He asserts that he and his children have deep psychological problems associated with the Father Roy affair which led to the breakup of his marriage and interference with the family relationship.
The defendants, other than Father Roy and Sister Guillory, filed a peremptory exception of no cause of action. The exception was sustained on the basis that since there is no cause of action against Father Roy or Sister Guillory, there is none against the other defendants. Judgment was rendered on October 5, 1990 dismissing the suit.
Mr. Greene asserts three specifications of error: (1) that the trial court erred in holding that his petition did not state a cause of action for negligence under LSA-C.C. art. 2315; (2) that the court misinterpreted an action for clerical malpractice; and, (3) that the court erred in not incorporating the allegations of defendants' outrageous conduct with Mr. Greene's right to recover damages for intentional infliction of emotional distress.

NEGLIGENCE
The trial court held that since there is no cause of action in Louisiana for the alienation of a wife's affections, the plaintiffs have no cause of action. It has been law in Louisiana since the case of Moulin v. Monteleone, 165 La. 169, 115 So. 447 (1927), that for policy reasons there is no cause of action for alienation of a wife's *1362 affections. However, Mr. Greene asserts that the trial judge read his petition too narrowly and that his children were severely affected by the destruction of the family unit, allegedly brought about by the defendants and the trial judge failed to consider this. We will first discuss the cause of action by Greene, and then that of his children.
In Moulin, supra, the Supreme Court of Louisiana held that Louisiana does not recognize a cause of action for alienation of affections. The court felt that to allow compensation for such an action "might tend more to encourage blackmail than to protect the home." Moulin, 115 So. at 457. A recent Louisiana Supreme Court case, 9 To 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), recognized a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person. An attempt was made to apply this holding to intentional or tortious interference with a contract of marriage in Butler v. Reeder, 573 So.2d 1159 (La.App. 5th Cir.1991). However, the court held in Butler, supra, that 9 To 5 Fashions, Inc. v. Spurney does not change the jurisprudential rule that there exists no cause of action for alienation of affections. The court upheld the defendant's exception of no cause of action.
Moulin v. Monteleone is still the law in Louisiana. It clearly suppresses any cause of action by a spouse for the intentional alienation of the other spouse's affection based on negligence, intentional or unintentional.

CLERICAL MALPRACTICE
Mr. Greene urges the court to find a cause of action for clerical malpractice by Father Roy. There are no jurisdictions in the United States that have established a cause of action for clerical malpractice. However, time and time again the issue has been raised. The courts have been hesitant to even address the issue. The separation of church and state established by the United States Constitution creates a delicate balance between their respective rights.
In Strock v. Pressnell, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988), which the trial judge relied on, a couple was having marital problems and went to a minister of the Lutheran church for counseling. The minister engaged in sexual relations with the wife. The couple divorced after this, and the husband sued the minister. The court, in discussing the husband's claim of clerical malpractice, stated:
"For clergy malpractice to be recognized, the cleric's behavior, even if it is related to his "professional" duties, must fall outside the scope of other recognized torts. "It is clear ... that clergy malpractice is distinct from an intentional tort, since the latter claims are currently actionable against clergymen regardless of their `professional' nature." Clergy Malpractice, supra, at 212. "To be viable, clergy malpractice must address lack of professional care, not intentional or reckless behavior directed against the claimant." Note, Clergy Malpractice: Taking Spiritual Counseling Conflicts Beyond Intentional Tort Analysis (1988), 19 Rutgers L.J. 419, 44. "To avoid a redundant remedy, ... any functional theory of clergy-communicant relationship not already actionable." Hester v. Barnett (Mo.App.1987), 723 S.W.2d 544, 551.
"In this case, the alleged acts of Pressnell fell within the realm of intentional tort law, i.e., amatory actionsnot malpractice."
The trial judge applied this rationale and held the present case is in tort, not malpractice, but whichever it is, it is a claim for alienation of affections, a cause of action not recognized in Louisiana.
We disagree somewhat with the trial court's analysis, but agree he reached the correct result. As we understand Strock v. Pressnell, supra, the court did not hold that clergy malpractice is not a tort. The court simply distinguished between the tort of malpractice and intentional tort in answer to the plaintiff's argument that the Ohio statute which abolished "amatory actions" (alienation of affections and criminal conversation) did not bar *1363 causes of action based on clergy malpractice.
Prosser and Keeton On Torts, Fifth Edition, Section 32, at pgs. 185 et seq., treats malpractice as a tort, but distinguishes between malpractice and intentional tort on the basis of different standards of care. In intentional tort cases, the standard of care is that of the ordinary reasonable person. In malpractice cases, the standard is that of other experts in the same field.
In Louisiana malpractice falls under our general tort law, LSA-C.C. art. 2315. Clearly, under our law, a cause of action for alienation of affections, whether based on intentional tort or malpractice, is a tort, and is barred by Moulin v. Monteleone, supra.
Of course, the present case is brought by the husband, who is seeking damages for alienation of affections. It is not brought by the wife who was being counseled by the priest. We express no opinion as to whether she has a cause of action for clergy malpractice. As stated supra, we will address later the cause of action by the children.
Strata v. Patin, 545 So.2d 1180 (La.App. 4 Cir.1989), writ denied, 550 So.2d 618 (La. 1989), involved a husband who brought a tort action against a priest and the archdiocese after he discovered his wife was having an affair with a priest in their parish. The couple had received counseling from this priest, as well as another priest in the parish. The couple were divorced after the wife became pregnant with the priest's child.
The defendants, the priest and church, filed a peremptory exception of no cause of action, asserting that the plaintiff's suit should be dismissed because plaintiff was seeking civil damages for alienation of his wife's affections and cited Moulin, supra. Plaintiff opposed the exceptions, contending that the church and the priest, as marriage counselors, had breached the duty to him to not further harm his marriage. The trial court denied the defendants' exceptions. There was a trial and the jury found the priest had provided counseling to the couple and was at fault in breaching a legal duty to the plaintiff. The jury also found the priest's conduct was a cause in fact of the injury suffered by the plaintiff, and that the priest acted in the course and scope of his employment as an employee of the Archdiocese of New Orleans. The jury awarded the plaintiff $100,000.00. The jury did not address the issue of whether the action was prescribed, so the trial judge declared a mistrial as to the issue of prescription only.
On appeal the fourth circuit reversed the trial court's decision on the issue of prescription. The court of appeal held the husband had both constructive and actual notice of his wife's affair more than one year before he filed suit and the husband did not suffer any mental incapacity that suspended the running of the one year prescriptive period.
From the Strata case it may be argued that by dismissing the case on the issue of prescription the court of appeal implicitly recognized a clerical malpractice cause of action. However, for the reasons stated above, we find no cause of action for clergy malpractice in the present case.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Mr. Greene asserts that he also has a cause of action against Father Roy and Sister Guillory for intentional infliction of mental distress. The elements of this tort are set out in Restatement (Second) of Torts § 46 and Comments (1965):
"One, defendant engaged in conduct that was `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; two, at the time of defendant's conduct he intentionally or recklessly caused plaintiff severe emotional distress; three, plaintiff suffered extreme emotional distress; and four, defendant's conduct was a substantial factor in causing plaintiff's extreme emotional distress."
In the case of Steadman v. South Central Bell Telephone, Co., 362 So.2d 1144 *1364 (La.App. 2d Cir.1978) the court held that in order to recover for intentional infliction of emotional distress it is necessary that the victim of the outrageous conduct bring the action and the actor harbor the intent to embarrass, humiliate or cause emotional distress.
Mr. Greene and his children did allege severe emotional distress from the circumstances surrounding the breakup of this marriage. However, the alleged conduct of Father Greene and Sister Guillory was not directed toward Mr. Greene or his children nor are there any facts alleged that they intended to cause him or his children emotional distress. Thus the third element, intent to cause emotional distress, is lacking. Plaintiffs do not have a cause of action for intentional infliction of emotional distress.

THE CHILDREN'S CAUSE OF ACTION
In Prosser and Keeton, Fifth Edition, Section 124, at page 929, the authors discuss the child's cause of action against a third party for alienation of a parent's affections:
The older common law gave the child no right to the services of a parentas distinguished from supportand there was no claim analogous to claims by spouses or parents for enticement, criminal conversation or seduction. Since 1923 a number of cases have raised the issue, however, whether a child might recover for the alienation of a parent's affections.85 The overwhelming response has been that no such action will lie.86 Two states have held otherwise and have permitted the action,87 and the indication is that two other states might do so.88 But these decisions have commanded no following and recent holdings in other states have continued to reject any action by the child for alienation of parental affections.89 Some of the reasons given for denying a right of action to the child, for example, the absence of precedent, are not persuasive, and it has been contended with obvious reason that the interest of the child in an undisturbed family life is at least of equal importance with that of the parents and entitled to equal or greater protection at the hands of the law.90 But it is obvious that the child's claim may be used as a surrogate for the claim of a disgruntled parent, who can no longer sue in most states, and courts are no doubt reluctant to allow one parent to use children as pawns, with probable further disruption of family ties. This, together with a growing scepticism in the courts about the usefulness of judicial intervention in family life by way of tort suits makes it unlikely that the child's alienation action will be substantially expanded.
The annotation, 60 A.L.R.3d 931, at pgs. 935-937, discusses the reasons given by courts for denying or allowing a cause of action by the children.
The courts have given many reasons for denying recovery in a direct action by a child,17 including (1) that a child has no right to the "consortium" of his parent, which right is the basis of a spouse's action for alienation of the other spouse's affections;18 (2) that a child's "right" to his parent's affection, or the "wrong" done by the defendant, is social or moral rather than legal;19 (3) that to allow recovery would cause a flood of litigation,20 or fraudulent or extortionary litigation.21 or would convert the family into a commercial enterprise,22 or would allow children to control the conduct or associations of their parents, who are free agents; 23 (4) that it would be very difficult or impossible to define the point at which the child's right would cease, in view of the mutability of his status,24 or to adequately assess the damages; 24.5 (5) that a ("heart balm") statute prohibited such actions;25 (6) that the creation of such a right of action is a policy matter for the legislature rather than the courts to decide;25.5 (7) that the rarity of assertion of such a right indicates a lack of need for its recognition;26 (8) that allowing such a right of action would not deter the wrongdoer, since his behavior "springs from motives that seldom if ever count the financial cost;" 27 (9) that there was no evidence that the defendant, rather than the parent whose affections *1365 allegedly had been alienated, had initiated their love affair and subsequent marriage;28 and (10) that there was no allegation that the parent had actually abandoned the children.29
While the number of cases in which the courts have allowed a direct action by a child against a third person for alienating the affections of his parent or causing his parent to neglect family duties is small, the issue was discussed at length in each case, the courts rejecting the view that the lack of precedent for such a right of action was conclusive or precluded the exercise of "judicial empiricism." 30 In all of these cases, too, the courts stressed the changing nature of the family and the relationships of its members, reasoning that children now have rights, unknown to the common law, which it is in the interest of society to protect.31 In some of the cases in which recovery was allowed in a direct action by the child, the arguments based on a possible "flood of litigation" 32 and an asserted difficulty in assessing damages 33 were expressly rejected. Other reasons for the decisions in individual cases included (1) that a state constitutional provision required that a remedy be provided for every wrong;34 (2) that a "heart balm" statute, being in derogation of the common law, would be strictly construed as abolishing alienation of affections actions only of the traditional kind involving a suit by one spouse for alienation of the affections of the other; 35 and (3) that the cause of action could be sustained as analogous to other kinds of actions for interference with expected benefits.36
There is no Louisiana case which has considered the problem. We note that although plaintiff raises the issue, he does not cite any authorities or give extensive reasons. The defendants ignore the problem. Also, the district court does not mention the issue.
This court must simply make a policy decision. We have carefully considered the cases from other states cited and discussed in 60 A.L.R.3d 931. According to this annotation and Prosser and Keeton, the overwhelming majority of courts which have addressed the issue, have denied a cause of action to children for alienation of their parent's affection. We recognize there are good arguments on both sides, but ultimately side with the majority. The arguments which particularly influence us are:
(1) The child's claim may be used as a surrogate for the claim of the disgruntled parent who cannot sue in Louisiana.
(2) The children may be used as pawns by parents in marital disputes, resulting in more harm to the children.
(3) To allow recovery would cause a flood of litigation, opening the door to fraudulent or extortionary litigation.
(4) It would allow children to control the conduct and association of their parents. And,
(5) the courts should be reluctant to allow tort suits in which family members are on opposing sides.

RESPONDEAT SUPERIOR
Under the doctrine of respondeat superior the employer is liable only to the extent the employee acted tortiously. Morris v. Guidry, 335 So.2d 75, writ denied, 338 So.2d 702 (1976). No cause of action exists against Father Roy or Sister Guillory. Thus there is no cause of action against the other defendants who filed this exception of no cause of action.

DECREE
For the reasons assigned, the judgment appealed is affirmed. All costs of appeal are assessed against the plaintiffs appellants.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, and Judge Kaliste J. Saloom, Jr. participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.