11 WILLIAMS, Judge.
In this medical malpractice action, the plaintiffs, Marvin and Annette Wells, appeal an adverse judgment following a jury trial, rendered in favor of the defendant, Dr. Robert Lurate, finding that he was not negligent in his medical treatment of the plaintiffs’ infant son. For the following reasons, we affirm.
FACTS
The plaintiffs, Marvin and Annette Wells, were the parents of Marvin Wells, Jr., a fourteen-month-old sickle cell anemia patient. As a part of the child’s treatment for the disease, his mother gave him two daily doses of penicillin as prescribed. On the afternoon of November 3, 1990, the child’s mother noticed that he had a fever and gave him tylenol instead of the usual dose of penicillin. The child was reportedly active during the late afternoon. However, after the child awoke from a nap at 7:30 p.m., his mother observed that he was feverish, irritable and his condition was visibly worse. She brought her son to the DeSoto General Hospital emergency room in Mansfield.
The defendant, Dr. Robert Lurate, was the emergency room physician on duty. He took the child’s history and performed a physical examination. The child had a respiration rate of 68 breaths per minute, a temperature of 103.5 degrees Fahrenheit and a pulse rate of 120 beats per minute. The physical examination revealed the presence of diffuse rhonchi in the child’s lungs. Dr. Lurate prescribed intravenous (IV) fluids and supplemental oxygen for the child. He also ordered a chest x-ray and a complete blood count (CBC). After receiving the fluids and oxygen, the child’s condition seemed to improve. His breathing was not labored and he appeared stable to both Dr. Lurate and the attending nurse, Alicia Williams. Dr. Lurate was concerned with the CBC results, which showed a low hemoglobin level of 4.5 and a hematocrit level of 15.5. The normal hemoglobin level for a sickle cell child is 7. Because of these concerns, he then ^contacted the pediatric emergency room at LSU Medical Center (LSUMC) in Shreveport and consulted with Dr. Terry Kendrick, the pediatrician on duty. After he was informed of the child’s physical condition, Dr. Kendrick recommended that the child be sent to LSUMC as quickly as possible because his condition required intensive care (ICU) facilities not available at DeSoto General. Dr. Lurate reported that Mansfield did not have ambulance service available and that the closest ambulance would take an hour to arrive from Logansport. Dr. Lurate told Dr. Kendrick that the child appeared stable and so they decided that the quickest means of transporting the patient to LSUMC was by private car. The IV fluids and oxygen were discontinued, but the child’s vital signs were not rechecked before transport. At 10:45 p.m., the child left DeSoto General in a private car for the approximately 45 minute trip to LSUMC. Several miles outside of Shreveport, the child began having seizures. He was comatose upon arrival at the LSUMC emergency room shortly after midnight and was transferred to the pediatric ICU. Despite the emergency treatment undertaken at LSUMC, at 3:40 a.m. the child’s heart stopped and CPR was unsuccessful. The cause of death was recorded as overwhelming pneumococcal sepsis and septic shock.
The plaintiffs filed a complaint against the defendant and his liability insurer and re *1061 quested the formation of a medical review panel. The complaint alleged that the defendant failed to follow accepted emergency medical standards in his treatment of the plaintiffs’ child. The review panel found in favor of the plaintiffs, who then filed this action. At the conclusion of the case, the trial court submitted special jury interrogatories on the issues of the standard of care, causation and damages. As to whether Dr. Lurate breached the standard of care, the jury answered in the negative, thereby foreclosing its consideration of the remaining issues of causation and damages. A written judgment in accordance with the jury’s verdict was subsequently rendered. The plaintiffs appeal this ^judgment.
DISCUSSION
The plaintiffs argue the jury was clearly wrong in finding that Dr. Lurate was not negligent in his medical treatment of their child. They contend Dr. Lurate breached the standard of care by failing to give the child antibiotics and a blood transfusion, and by transporting the child in a private automobile without oxygen and IV fluids.
In a malpractice action based on the negligence of a physician licensed to practice in Louisiana, where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to that specialty, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the same medical specialty. The plaintiff must also prove that the defendant either lacked this degree of skill or failed to use reasonable care and diligence in applying that skill, and that defendant’s failure to exercise this degree of care caused plaintiff to suffer injuries that would not otherwise have occurred. LSA-R.S. 9:2794 A; Smith v. Lincoln General Hospital, 27,133 (La.App.2d Cir. 6/21/95), 658 So.2d 256, writ denied, 95-1808 (La. 10/27/95), 662 So.2d 3. The mere fact that an injury occurred does not raise a presumption that the physician was negligent. LSA-R.S. 9:2794 C.
A physician is not held to a standard of absolute precision. Rather, his conduct and judgment are evaluated in terms of reasonableness under then-existing circumstances, not on the basis of hindsight or in light of subsequent events. Iseah v. E.A. Conway Memorial Hospital, 591 So.2d 767 (La.App.2d Cir.1991), writ denied, 595 So.2d 657 (La.1992). Credibility determinations, including the evaluation of expert testimony, together with the ultimate issue of whether a plaintiff has satisfied his burden of proof are factual issues to be resolved by the |4trier of fact and will not be disturbed on appeal in the absence of manifest error. Iseah v. E.A. Conway Memorial Hospital, supra. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the present case, the plaintiffs contend the evidence at trial established that Dr. Lurate failed to deliver appropriate emergency medical care to the child. Dr. Robert West, the plaintiffs’ emergency medicine expert, testified that in his opinion, Dr. Lurate breached the standard of care by failing to initiate antibiotic treatment for a child with sickle cell disease presenting with a high fever and with an above normal white blood cell count. The plaintiffs’ pediatrics expert, Dr. David Beckton, also testified that the child should have received antibiotics soon after his arrival at the emergency room.
The jury also heard testimony from Dr. Lurate, who stated that he does not routinely give antibiotics to patients before identifying the source of infection, because of the risk of a negative reaction. Dr. Lurate pointed out that if a viral infection was involved, there was a chance that the antibiotics would not destroy a resistant strain, which would then continue to spread in the patient’s body. Dr. Lurate also explained that he did not give antibiotics to this child because of the possibility that a spinal tap would be done to check for the presence of meningitis. Antibiotics could contaminate the spinal fluid and prevent identification of an attacking organism. In addition, Dr. Lurate believed that the child had received his prescribed penicillin because the mother had advised that he had not missed any doses.
*1062 The plaintiffs elicited testimony from Dr. West and Dr. Beekton that the child should have been given a blood transfusion because of the decreased hemoglobin level. On cross-examination, Dr. West acknowledged that he was |5unaware of DeSoto General’s blood bank capacity, and that his testimony was based on the capacity of the average general hospital. Dr. Beekton maintained that although blood transfusions normally require that the blood first be typed and cross-matched, O-negative blood can be given in an emergency.
Dr. Lurate testified that DeSoto General’s lab typically took over an hour to type and match blood, did not have the ability to screen blood for antibodies, and may not have had the correct blood type available at the end of the process. He stated that waiting for a blood transfusion at DeSoto General would have delayed the child’s treatment at the LSUMC pediatric intensive care unit. He pointed out that despite LSU’s superior facilities, it took over one and one-half hours to give O-negative blood to the child. Dr. Lurate also emphasized that O-negative blood is not risk free, but is simply the safest type of blood to use in an emergency, such as when a patient is bleeding to death. He noted that sickle cell patients are very much at risk for reactions to transfusions and that even O-negative blood can cause death in certain circumstances.
The plaintiffs also argue that Dr. Lurate’s decision to send the child to LSUMC by private automobile, rather than by an ambulance equipped with oxygen, reduced the child’s chance of survival. Dr. West, who is not trained in pediatrics and has only limited experience with sickle cell patients, criticized Dr. Lurate’s discontinuation of IV fluids and oxygen for transport. Dr. West opined that sending the child in a private car was negligence because there are other options available in most situations. However, he admitted on cross-examination that he did not have personal knowledge of the availability of ambulance service at DeSoto General.
The plaintiffs assert that ambulance service was available for use by DeSoto General. However, Robert Taylor, the hospital administrator, testified that to his knowledge there was no ambulance equipped with life support available in |6Mansfield during the time the child was brought to the emergency room in November 1990. In rebuttal, the plaintiffs introduced the testimony of a Jenkins Funeral Home representative, who maintained that Jenkins operated an ambulance service in Mansfield at that time. The witness admitted that nothing had been done to notify the hospital’s administrator of the availability of this ambulance service for the area. Dr. Beekton also stated that he would have maintained the child on oxygen, although he acknowledged that oxygen could not reverse the process of pneumococcal infection, and that having a lot of oxygen in the lungs does not do any good if the child’s blood cannot carry the oxygen to the organs.
Dr. Kendrick, defendant’s expert in pediatrics with extensive experience in pediatric emergency care, testified that giving the child oxygen and fluids during the trip to Shreveport would not have made any difference in the outcome. The defendant’s other pediatrics expert, Dr. William Haynie, who has over thirty years of experience, testified that Dr. Lurate’s removal of the oxygen for the trip to Shreveport made absolutely no difference in the child’s chance of survival because the oxygen-carrying capacity of the child’s blood was severely diminished due to the sickle cell disease and the pneumococcal infection. Dr. Haynie stated that none of the options were good for the welfare of the child, but that Dr. Lurate and Dr. Kendrick had to make a judgment call. Dr. Haynie was of the opinion that Dr. Lurate’s treatment of the child was appropriate and that he met the standard of care. Dr. Kendrick also concluded that Dr. Lurate’s treatment of the child met the emergency medicine standard of care.
Dr. Joseph Bocchini, Jr., the defendant’s specialist in pediatric infectious disease, including sickle cell, testified that he believed it was already too late to save the child by the time he had arrived at the emergency room that evening, because of the rapid progression of the pneumococcal infection. Dr. Boc-chini was of' the opinion that Dr. Lurate’s care did not diminish the child’s chance of ^survival.
Dr. Lurate testified that he was alarmed by the blood lab results showing a hemoglobin level of 4.5, which was low even for a *1063 sickle cell child. Dr. Lurate recognized that he needed to consult with a specialist, and discussed the case with Dr. Terry Kendrick, who said it was necessary to get the child to the LSUMC pediatric emergency room as quickly as possible and that he would accept the patient. Dr. Lurate explained that the transport options were limited and they considered sending an ambulance or helicopter from Shreveport, but because of the processing arrangements involved, these options would take longer than driving the child from Mansfield to LSUMC. Both Dr. Lurate and Dr. Kendrick testified that leaving the child at DeSoto General was not a viable option because a pediatrician was not available and there was no pediatric intensive care unit. Time was the critical element and since Dr. Lurate felt the child appeared stable, Dr. Lurate and Dr. Kendrick decided their best option was to send the child by private automobile to LSUMC.
The jury heard the conflicting expert testimony on the issue of whether Dr. Lurate’s treatment of the child satisfied the applicable standard of care. There is evidence from which the jury could reasonably conclude that Dr. Lurate rendered the appropriate emergency medical care and chose the best available means to preserve a chance for the child’s survival under the circumstances. After reviewing the record and trial transcript, we cannot say that the jury was clearly wrong in its evaluation of the expert testimony or in its ultimate finding that Dr. Lurate was not negligent in providing emergency medical care. Therefore, the assignment of error lacks merit.
For the foregoing reasons, the trial court’s judgment is affirmed. The costs of this appeal are assessed to the appellants, Marvin and Annette Wells.
AFFIRMED.