803 So.2d 273 (2001)
Willie Edna TARBUTTON, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., et al., Defendants-Appellees.
No. 35,362-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*274 C. Daniel Street, Monroe, Counsel for Appellant.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Lawrence W. Pettiette, Jr., Joseph S. Woodley, Counsel for Appellees.
Before BROWN, PEATROSS and DREW, JJ.
BROWN, Judge.
In this medical malpractice action, plaintiff, Willie Edna Tarbutton, has appealed from a judgment in favor of defendants, St. Paul Fire and Marine Insurance Co. and Dr. J.B. Duke McHugh, dismissing her claim for damages. Plaintiff asserts that Dr. McHugh violated the applicable standard of care by performing a second colonoscopy within three years of the first procedure. The facts are not in dispute and each party rests its case on expert opinion. Finding no manifest error, we affirm.

Facts and Procedural Background
In 1994, Miss Tarbutton's primary care physician, Dr. Clyde Elliott, admitted her to the hospital upon presentation of complaints of lower and upper abdominal pain and constipation. Miss Tarbutton denied rectal bleeding or significant history of constipation and noted that she had no family history of colon cancer.
Dr. J.B. Duke McHugh, a board certified gastroenterologist, consulted on Miss Tarbutton's case. Dr. McHugh scheduled and performed a colonoscopy on Miss Tarbutton to determine the etiology of her abdominal pain and constipation. Dr. McHugh noted that Miss Tarbutton tolerated the colonoscopy without incident; he also observed that the procedure was negative for cancer and that no polyps were noted.
Dr. McHugh felt that Miss Tarbutton's complaints were due to diverticular disease. *275 He prescribed Milk of Magnesia tablets to help with her constipation problem and recommended that she return in three years for a repeat colonoscopy as a cancer screen. Dr. McHugh opined that if no polyps were identified at that time, no further colon cancer screening would be required.
Miss Tarbutton was 72 years old when the first colonoscopy was performed in September 1994. Three years later, she returned to Dr. McHugh for a cancer screening colonoscopy. In taking the preparatory liquid the night before the procedure, Miss Tarbutton experienced abdominal pain, rectal bleeding, bloody stool and dehydration. She was admitted to the hospital through the emergency room on September 7, 1997. Dr. McHugh performed the colonoscopy as scheduled on September 8th and during the procedure, the lining of Miss Tarbutton's colon was perforated.
Dr. William Ferguson performed repair surgery on Miss Tarbutton on September 9, 1997. Miss Tarbutton remained in the hospital until September 19th when she was discharged. Weak and unable to care for herself without assistance, Miss Tarbutton stayed in a local nursing home for a month before going home.
Miss Tarbutton is a retired classroom teacher and girls basketball coach whose teams won seven straight state championships. She enjoyed working in her flower beds and vegetable garden. Since the surgery, she is not able to use a ground tiller or work in her gardens as she did before. She has also had to hire a person to come to her home and help her. For several months Miss Tarbutton had assistance twice a week; now, her helper only comes once a week.
Miss Tarbutton instituted a malpractice claim and a medical review panel was convened. It was Miss Tarbutton's contention that Dr. McHugh failed to comply with the applicable standard of care by performing the second colonoscopy in September 1997, only three years after a negative exam. The panel reached a unanimous decision that Dr. McHugh's treatment of Miss Tarbutton did not fall below the applicable standard of care. Thereafter, the instant action was filed.
After considering the testimony and evidence, the trial court noted significant disagreements between the experts and found that defendants' expert was more credible, in addition to being more knowledgeable about the subject at issue. Therefore, the court found that Dr. McHugh's treatment of Miss Tarbutton was within the standard of care and dismissed her claim. It is from this judgment that plaintiff has appealed.

Discussion
Plaintiff contends that the trial court erred in failing to find that Dr. McHugh's treatment of her was below the standard of care. According to plaintiff, she presented sufficient evidence to establish that Dr. McHugh deviated from the appropriate standard of care in performing the second colonoscopy and that the perforation that occurred during this procedure resulted from Dr. McHugh's deviation from the applicable standard.
In a medical malpractice action against a physician who practices in a particular specialty, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians in that specialty; that the defendant either lacked this degree of skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and that as a proximate result of the breach the plaintiff suffered injuries that would not otherwise have been incurred. La.R.S. 9:2794(A); *276 Elliott v. Robinson, 612 So.2d 996 (La.App. 2d Cir.1993).
A physician is not held to a standard of absolute precision. Rather, his conduct and judgment are evaluated in terms of reasonableness under then-existing circumstances, not on the basis of hindsight or in light of subsequent events. Wilson v. Winn Parish Medical Center, 34,882 (La.App. 2d Cir.06/20/01), 793 So.2d 268.
Appellate review of the trial court's findings in a medical malpractice action is limited. The applicable standard of care is determined from the particular facts of a case, including evaluation of the expert testimony. Corley v. State, Dept. Of Health and Hospitals, 32,613 (La. App.2d Cir.12/30/99), 749 So.2d 926. When the medical experts express different views, judgments and opinions on whether the standard was met in any given case, the reviewing court will give great deference to the trier of fact's evaluations. Id., Beckham v. St. Paul Fire and Marine Insurance Co., 614 So.2d 760 (La.App. 2d Cir.1993).
It is for the factfinder to evaluate conflicting expert opinions in relation to all the circumstances of the case. Corley, supra. Credibility determinations, including the evaluation and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which will not be disturbed on appeal in the absence of manifest error. Wilson, supra; Corley, supra. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Corley, supra; Wells v. Lurate, 28,322 (La.App. 2d Cir.05/08/96), 674 So.2d 1059, writ denied, 96-1858 (La.10/25/96), 681 So.2d 372.
Both of the parties offered expert testimony in support of their position regarding whether Dr. McHugh deviated from the applicable standard of care in treating Miss Tarbutton. A summary of the expert testimony follows.
Plaintiff's expert, whose testimony was by way of deposition, was Dr. Thomas Hargrave, III. Dr. Hargrave graduated summa cum laude from Yale University in 1975 and from UCLA Medical School in 1979. He is board certified in gastroenterology and internal medicine and has practiced gastroenterology in California for more than 15 years.
Dr. Hargrave took part in a national task force which was created in 1994 under the auspices of the American College of Gastroenterology and the American Gastroenterological Association to study colorectal cancer screening and detection. The findings and opinions of the task force were completed in 1997 and their report was published in the Journal of Gastroenterology in May or June of 1997.
Dr. Hargrave testified that his opinion was based solely upon his review of the hospital records of both procedures, the finding of the medical review panel and the recommendations of the task force referred to above. Dr. Hargrave opined that Dr. McHugh's treatment of Miss Tarbutton fell below the standard of care when he scheduled and performed a repeat colonoscopy in 1997, three years after a negative test. Dr. Hargrave emphasized that he would not comment on the actual procedure, particularly whether the perforation that occurred was due to physician error.
Dr. Hargrave noted that one of the recommendations of the task force was that, when a colonoscopy is performed and the findings are negative for cancer and no polyps are found, the procedure should not be repeated for ten years. It is Dr. Hargrave's opinion that there is no one who *277 believes that a colonoscopy with negative findings should be repeated more frequently than every ten years.
According to Dr. Hargrave, there are alternative procedures, such as sigmoidoscopy, which are less invasive, more cost effective and present fewer risks to the patient. While colonoscopy is one method of screening for colon cancer, it is not the primary screening tool for average risk persons and is not considered the standard of care for such testing.
Dr. Hargrave stated that a repeat colonoscopy at an interval of three to five years would be reasonable only if polyps had been found. After a negative test, however, a repeat test in three years would be unnecessary in terms of detecting cancer because it takes cancer an average of seven to 15 years to develop from a benign polyp.
According to Dr. Hargrave, there was absolutely no scientific or medical justification for the second colonoscopy in this case. Furthermore, any complication that occurs as a result of a procedure that is neither necessary nor in the best interest of the patient's health cannot be justified and is below the standard of care.
On cross examination, Dr. Hargrave conceded that the accuracy of scoping procedures, such as colonoscopy, performed by a board certified gastroenterologist, is 97-100% for detecting cancer. He reiterated, however, that once a patient has a colonoscopy with negative results, even if there is a family history of colon cancer, there are very few people who would recommend repeating the procedure in only three years. According to Dr. Hargrave, there was no justification for Dr. McHugh's decision to repeat the colonoscopy three years after the initial exam yielded negative results.
Defendant, Dr. J.B. Duke McHugh, graduated with honors from Lamar University in 1974 and received his medical degree from the University of Texas in 1983. Dr. McHugh has practiced gastroenterology in Louisiana since 1990 and is board certified in gastroenterology as well as internal medicine.
Dr. McHugh testified that during his specialty training in 1989, gastroenterologists were screening for cancer every three to five years. In his practice, in 1994, depending on the patient's age and other factors, he recommended a repeat colonoscopy as a cancer screen every three to five years. As equipment and technology has improved, around 1997, he began recommending colonoscopies at five year intervals. According to Dr. McHugh, the AGA and ACGA guidelines, which first appeared in mid-1997, were simply recommendations, nothing more. Dr. McHugh emphasized that these cancer screening guidelines were never intended to be used as standards of care to be uniformly applied to all persons. Dr. McHugh noted that he does not personally agree with the guidelines and does not follow them in his practice.
Dr. McHugh further stated that there were no specific guidelines that applied to a patient such as Miss Tarbutton, who fell within the average risk category with no family history of colon cancer and a negative colonoscopy. He indicated that, contrary to plaintiffs argument, he does not routinely rescreen a patient every three years.
Instead, Dr. McHugh's decision to perform the second colonoscopy in 1997, three years after the first procedure, was based primarily on Miss Tarbutton's age. Considering her advancing age and in all probability declining health as she aged, Dr. McHugh felt that Miss Tarbutton would be able to tolerate the procedure better at *278 age 75 than at age 77. A negative screen at age 75 would mean that no further workup or colon cancer screening would be required. While there is no specific recommendation or guideline setting forth a maximum age at which to stop screening, he has found in his practice that patients over the age of 75 have little or no risk of developing cancer at that late stage.
Because Miss Tarbutton was only 72 years old at the time of the first colonoscopy, and because of the chance that he may have missed something, especially with the thickened folds in her colon, he felt that she needed a cancer screening colonoscopy at age 75.
His notes from the 1997 procedure show that Miss Tarbutton was admitted to the hospital through the emergency room the night before the colonoscopy was scheduled with complaints of rectal bleeding and abdominal pain. Dr. McHugh was concerned because the rectal bleeding was new and he didn't know whether the bleeding was caused by the bowel preparation. This in and of itself was another reason for doing the colonoscopy, to determine the cause of rectal bleeding.
Dr. McHugh testified that he is familiar with the AGA and ACGA guidelines. According to Dr. McHugh, the guidelines are simply recommendations, not standards of care. Dr. McHugh emphasized that these findings were never intended to be mandatory requirements for practicing gastroenterologists. Instead, the guidelines were developed to inform the public of scientific efforts to reduce the risk of developing colon cancer.
According to Dr. McHugh, in the practice of gastroenterology or medicine in general, notwithstanding any recommendations or guidelines, to comply with the applicable standard of care, the physician must use his professional judgment based upon clinical diagnostic studies of the patient.
One of the members of the medical review panel, Dr. Paul Jordan, testified for defendant. Dr. Jordan, who obtained his medical degree from Toronto Medical School and is board certified in gastroenterology and internal medicine, is the chief of the gastroenterology section at the LSU Medical School in Shreveport, Louisiana. As such, he has a clinical practice in addition to his teaching responsibilities. He estimated that he performs between 10 and 15 colonoscopies a week. Dr. Jordan also noted that he is involved in the National Colonoscopy Trial.
Dr. Jordan stated that as a member of the review panel, he examined the records submitted by both parties and that his decision was based upon the records as well as his experience in the field of gastroenterology. The review panel concluded unanimously that Dr. McHugh did not violate the standard of care by scheduling and performing the repeat colonoscopy in September 1997. Likewise, the panel found no violation of the standard of care when Dr. McHugh perforated Miss Tarbutton's colon during the procedure.
Dr. Jordan noted his familiarity with the guidelines compiled by the AGA and ACGA in 1997. These particular recommendations were published in the New England Journal in May or June of 1997 and in the journal of the ACGA sometime later. Therefore, the task force report and recommendations would not have been widespread when Dr. McHugh performed the second colonoscopy. To the contrary, Dr. McHugh's treatment plan for Miss Tarbutton would have been fairly common at that time. Dr. Jordan emphasized that the guidelines are recommendations, not mandates, and do not purport to set the standard of care for gastroenterologists. Actually, the recommendations and the *279 standard of care are two completely separate and distinct things. According to Dr. Jordan, the guidelines were developed to inform the public of efforts to scientifically reduce the risk of developing colon cancer and represent a composite of what can be done to provide the greatest benefit to patients at the lowest possible cost.
According to Dr. Jordan, in the practice of gastroenterology or even medicine in general, to comply with the applicable standard of care, a physician must make decisions using his professional judgment based upon his clinical diagnostic studies of the patient, notwithstanding the guidelines or recommendations. Dr. Jordan noted that the treatment of individual patients varies, even when they fall into the same risk category.
Dr. Jordan explained that the colon, which is approximately six feet long, has several twists and bends and is filled with nooks and crannies. It is quite possible for Dr. McHugh to have missed a polyp in Miss Tarbutton's colon during the 1994 colonoscopy. Had a polyp been missed in the first procedure, it could have been cancerous by 1997. According to Dr. Jordan, there is always a possibility for a misreading during a colonoscopy. A second procedure virtually eliminates this possibility.
The following is excerpted from the trial court's written reasons for judgment:
The court has given careful consideration to all of the evidence presented in this case. Pertinent portions of the medical records and the deposition testimony of Dr. Hargrave were read and reexamined several times. The court made copious notes of the testimonies of the defendant and Dr. Jordan. The court has also taken into consideration the findings and opinion of the Medical Review Panel. The court has also made an evaluation of the credibility and testimony of Dr. Hargrave and Dr. Jordan. Both doctors testified with the benefit of hindsight. Dr. Jordan's testimony and the opinion of the Medical Review Panel are consistent with Dr. McHugh's testimony. Their opinions are based upon what they believe to have been acceptable medical practice and procedure in 1994 and 1997 in Ouachita Parish and in the state of Louisiana. On the other hand, Dr. Hargrave's opinion is based solely upon what he perceived to be the recommendations or guidelines established by a national task force in mid-1997 and his practice in Oakland, California.
This case would never have been brought to court but for Dr. McHugh's perforation of Ms. Tarbutton's colon on September 8, 1997. Perforation is a known risk of colonoscopy and she was well aware of it. The perforation came as a result of the presence of diverticula in the lower end of plaintiff's colon.
This case is not about the skill or lack thereof of Dr. McHugh. This case is about the procedure used on the plaintiff. It is colonoscopy versus flexible sigmoidoscopy and barium enema. It is an already accepted practice versus newly created guidelines or recommendations. This court does not find that the task force recommendations in 1997 are standards of care by which Dr. McHugh may have been governed in this case.
Dr. McHugh was not required to exercise the highest degree of care possible in Ms. Tarbutton's case. His duty was only to exercise that degree of care and skill ordinarily used by his peers under similar circumstances. Dr. McHugh's judgment in this case must be evaluated in terms of reasonableness and circumstances existing in September of 1997 *280 and not in terms of the result, or in light of subsequent medical development or hindsight. Dr. McHugh's treatment in this case must be evaluated in terms of the facts about the plaintiff known to him at the time it was rendered and not upon the recommendations and guidelines of a task force....
Assuming that colonoscopy and flexible sigmoidoscopy with barium enema were mutually acceptable procedures and sanctioned by qualified physicians of opposing views and that Dr. McHugh acted with reasonable care and diligence, then he cannot be said to have deviated from the standard of care. A physician faced with more than one acceptable procedure is not negligent for failing to choose a course of conduct that, at a later time, may be shown to be a wiser course. See Caldwell v. Parker, 340 So.2d 695 (La.App. 4th Cir.1976), writ denied, 342 So.2d 1120 (La.1977).
The plaintiff's evidence in this case does not rise to the level of proof by a preponderance of the evidence. The court is of the opinion that the testimony of Dr. Hargrave is not as sound as the testimony of Dr. Jordan. The court was more impressed with Dr. Jordan's knowledge of the subject at issue. His opinions had more weight and foundation than did those expressed by Dr. Hargrave. There were instances in his deposition where he became dogmatic when expressing an opinion. Dr. Jordan's opinions sounded more reasonable and logical.
For the reasons stated hereinabove, the court finds that the plaintiff, Willie Edna Tarbutton, has not proven by a preponderance of the evidence that the defendant, Dr. J.B. Duke McHugh, was negligent or violated the required standard of care in his treatment of the plaintiff on September 8, 1977.
In this case, as noted by the trial court, Miss Tarbutton presented expert testimony which conflicted with that of defendants' expert. The issue of whether a breach of the standard of care occurred is a factual question over which the trial court has great discretion and the resolution of which turns in large part upon the evaluation of the credibility of the testimony of the witnesses. Considering the above conflicting testimony, we cannot say that the trial court committed manifest error in finding that Dr. McHugh did not deviate from the applicable standard of care and was therefore not negligent in his treatment of Miss Tarbutton. In light of the evidence regarding the effectiveness of colonoscopy and the small number of risks associated with the procedure, we cannot fault Dr. McHugh's approach. It is more circumspect to check for and remove benign polyps than to wait ten years after a negative test when, according to plaintiff's expert, a benign polyp could develop into cancer within seven years.

Conclusion
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant, Willie Edna Tarbutton.