ANTOINETTE C. DURACHER
v.
CHARLES O. ROY, D.D.S., MEDICAL PROTECTIVE INSURANCE CORPORATION, GREGORY MAY, D.D.S., AND NATIONAL FIRE INSURANCE COMPANY
No. 2008 CA 0731.
Court of Appeal of Louisiana, First Circuit
October 31, 2008
NOT DESIGNATED FOR PUBLICATION
DAVID R. PADDISON, JACQUES F. BEZOU, Attorneys for Plaintiff-Appellee, Antoinette C. Duracher.
DANTE V. MARALDO, GUICE A. GIAMBRONE, III, CRAIG R. WATSON, Attorneys for Defendants-Appellants, Charles O. Roy, D.D.S. and The Medical Protective Company.
PETER E. SPERLING, JOHN B. CAZALE, AMBROSE K. RAMSEY, III, Attorneys for Defendants, Dr. Gregory May and National Fire Insurance Company of Hartford.
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C. J.
In this dental malpractice action, defendants appeal a trial court judgment in favor of plaintiff awarding $47,000.00 in general damages and finding that Dr. Charles O. Roy negligently left a piece of a dental instrument in the plaintiff's mouth after a root canal procedure. For the following reasons, we affirm.

FACTS
Plaintiff, Antoinette C. Duracher, is a fifty-three-year-old diabetic woman who regularly obtains dental treatment. In September 2002, Ms. Duracher began a series of filling replacements in several teeth as recommended by general dentist, Dr. Gregory May. Dr. May performed non-surgical root canal therapy in some of Ms. Duracher's teeth (numbers 12, 13, and 14) after she experienced increased discomfort with the filling replacements. Additionally, Dr. May referred Ms. Duracher to an endodontist,[1] Dr. Charles O. Roy, for further evaluation and possible root canal therapy because of continuous unresolved pain. Ms. Duracher's treatment of all three teeth continued between Dr. May and Dr. Roy for approximately six months, when due to constant pain and discomfort, she eventually returned to Dr. Roy on March 18, 2003, for root canal retreatment on tooth number 14. After the retreatment, Ms. Duracher was still experiencing pain in April 2003, so she returned to Dr. Roy. Dr. Roy took x-rays, administered cortisone for inflammation, removed the crown on tooth number 14, and referred Ms. Duracher to a periodontist and an oral surgeon for further evaluation.
In June 2003, Ms. Duracher returned to Dr. May because her pain never subsided. An x-ray taken at that time revealed an obvious foreign object in Ms. Duracher's mouth outside the root tip of tooth number 14. Dr. May immediately referred Ms. Duracher to another endodontist, Dr. Catherine A. Hebert, for a second evaluation and possible retreatment of tooth number 14. Dr. Hebert's x-rays confirmed the presence of a foreign object in the periodontal ligament space between the root tip of tooth number 14 and the upper jaw bone. Because of Ms. Duracher's complaints of pain and the potential for long-term or chronic inflammation and/or infection, Dr. Hebert referred Ms. Duracher to an oral surgeon, Dr. Russell L. Westfall.
Dr. Westfall's evaluation of Ms. Duracher's condition confirmed the obvious presence of what appeared to be two broken pieces of a dental file instrument or dental filling material in the periodontal ligament space. Dr. Westfall recommended surgery to remove the foreign objects from Ms. Duracher's mouth since she was symptomatic and experiencing constant pain and discomfort due to chronic inflammation. Ms. Duracher consented to surgery in August 2003, at which time Dr. Westfall removed a small piece of a broken dental file located outside the apex of the root of tooth number 14. Dr. Westfall also surgically removed the tip of the root (an apicoectomy) for that tooth. A pathology report later verified that the foreign object was a piece of a broken dental file. Additionally, Dr. Westfall replaced a portion of deteriorated bone near tooth number 14 and a short time later performed apicoectomy surgeries on teeth numbers 12 and 13 as well. Approximately 14 months after beginning dental work on teeth numbers 12, 13, and 14, all of those teeth were permanently crowned and Ms. Duracher finally healed; however, she still experiences some lingering pain in the area of the multiple surgeries.
Ms. Duracher filed a dental malpractice claim against Drs. May and Roy and their insurers based on their alleged negligent treatment and performance of root canals which led to debilitating pain and extensive oral surgery after an undisclosed broken dental file was left in her mouth. Both doctors denied responsibility, even though the pathology report confirmed that Dr. Westfall had in fact removed a piece of a dental file instrument from the periodontal ligament space in Ms. Duracher's mouth. The matter was reviewed by a medical review panel, which unanimously found no breach of the standard of care attributable to a general dentist or an endodontist in performing root canals. The panel further found that it was unable to determine from Dr. Roy's x-ray that a foreign object was present.
Ms. Duracher then filed the instant medical malpractice suit against Drs. May and Roy and their respective dental malpractice insurers, National Fire Insurance Company and The Medical Protective Company,[2] essentially alleging the same complaints she asserted before the medical review panel. The matter proceeded to a bench trial after Ms. Duracher stipulated that her damages did not exceed $50,000.00. On the morning of trial, Dr. Roy stipulated that the broken dental file was more probably than not, and with a reasonable medical certainty, the result of the March 18, 2003 root canal retreatment procedure he had performed on Ms. Duracher's tooth number 14. Consequently, Dr. May and his insurer were dismissed from the lawsuit immediately prior to trial.
Thus, the only issues at trial were whether Dr. Roy's failure to discover and remove the piece of broken dental file breached the applicable standard of care for endodontists and whether that breach led to Ms. Duracher's painful inflammation and the necessity of successive oral surgeries. Following the close of evidence, the trial court took the matter under advisement. It then issued written reasons finding that Dr. Roy was one hundred percent at fault for leaving and not discovering the piece of broken dental file in Ms. Duracher's mouth, which had caused her injuries. Thereafter the trial court rendered judgment, awarding Ms. Duracher reimbursement for all of the dental services charged by Drs. Roy, Hebert, and Westfall relative to teeth numbers 12, 13 and 14, as well as $47,000.00 in general damages for her pain and suffering. This appeal by Dr. Roy and his insurer followed, claiming that the trial court erred in finding Dr. Roy breached the applicable standard of care and in finding that Dr. Roy's treatment caused Ms. Duracher's injury. Dr. Roy and his insurer also argue that the trial court erred in awarding damages for injuries to three teeth instead of one and in awarding excessive damages.

LAW AND ANALYSIS
The plaintiff bears the burden of proving that a dentist committed dental malpractice. LSA-R.S. 9:2794A; Wiley v. Karam, 421 So.2d 294, 296 (La. App. 1 Cir. 1982). Dr. Roy is a general dentist and endodontist who specializes in root canals. Accordingly, pursuant to LSA-R.S. 9:2794A, Ms. Duracher must establish by a preponderance of the evidence: (1) the degree of care ordinarily practiced by general dentists and endodontists who regularly perform root canal procedures; (2) that Dr. Roy either lacked this degree of knowledge or skill or failed to use reasonable care and diligence along with his best judgment in applying that skill; and (3) that as a proximate cause of his lack of knowledge or skill or the failure to exercise this degree of care, she suffered an injury she would not have otherwise incurred. See Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1233.
The applicable standard of care is determined from the particular facts and circumstances of each case, including the evaluation of the expert testimony. Tarbutton v. St. Paul Fire & Marine Ins. Co., 35,362 (La. App. 2 Cir. 12/5/01), 803 So.2d 273, 276. The evaluation of conflicting expert opinions in relation to all the circumstances of the case, as well as credibility determinations of all witnesses are factual issues to be resolved by the trier of fact, which will not be disturbed on appeal in the absence of manifest error. Id. When the medical experts express opposing opinions on whether the standard was met in any given case, the reviewing court shall give great deference to the trier of fact's evaluations. Lefort v. Venable, 95-2345 (La. App. 1 Cir. 6/28/96), 676 So.2d 218, 221. An appellate court may not re-weigh the evidence or substitute its own factual findings for those of the trial court even though it may have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La. 4/3/02), 816 So.2d 270, 279. Furthermore, it is well established that where medical disciplines overlap, it is appropriate to allow a specialist to give expert testimony as to the standard of care applicable to areas of the practice common to both disciplines. Coleman v. Deno. 99-2998 (La. App. 4 Cir. 4/25/01), 787 So.2d 446, 468, affirmed in part, modified in part, and remanded, 01-1517 (La. 1/25/02), 813 So.2d 303. However, the weight to be given to a medical expert's testimony ultimately rests with the finder of fact. Id.
A trial court's findings on the issue of dental malpractice are factual in nature; thus, they are reviewed under the manifest error-clearly wrong standard of review. See Salvant v. State, 05-2126 (La. 7/6/06), 935 So.2d 646, 650-651. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993).
After reviewing the record in its entirety, including the deposition testimonies of several dentists that were admitted into evidence at trial, we conclude the trial court reasonably found that Dr. Roy breached the degree of care ordinarily practiced by a general dentist and endodontist who regularly performs root canal procedures. A review of the record reveals that the trial court was presented with differing views regarding the methods of determining whether a dental file was separated or broken during a root canal procedure. It was undisputed that breaking a dental file instrument is a well-known risk associated with root canals, and as such, it is not considered to be a breach of the standard of care if a file breaks during the procedure. It was also undisputed that once it is discovered that a dental file is broken, the dentist or endodontist has a duty to inform the patient. Therefore, the pertinent issue involved determining the acceptable methods for detecting a broken dental file during and after a root canal procedure.
Dr. Roy testified that he limits his dental practice to the performance of root canals, carrying out approximately 1,000 root canals per year. He testified that he always takes x-rays before and after root canals and he visually inspects his dental files by waving them in front of a light to see if they are unwinding or broken. Dr. Roy stated that he followed these methods during Ms. Duracher's root canal retreatment procedure and he did not notice that any files were broken. He also stated that he did not see a piece of broken dental file on the one x-ray view that he took after the root canal; however, he acknowledged in his deposition testimony that the bite-wing x-ray he utilized revealed only one side view, not different angles of tooth number 14 or a complete view of its roots. He also admitted that bite-wing x-rays are not the standard form of x-ray for root canals, but he preferred that type of x-ray. Dr. Roy stated that if he had noticed a piece of broken file, he would have noted it in his record and he certainly would have informed Ms. Duracher, in keeping with the applicable standard of care. Dr. Roy offered no explanation as to why he did not see the piece of broken dental file on the x-ray he took immediately following Ms. Duracher's root canal on tooth number 14 or on the x-ray he took one month after the procedure. However, Drs. May, Hebert, and Westfall all testified that they saw an obvious foreign object on the x-rays they each took of Ms. Duracher's tooth number 14 within months of Dr. Roy's root canal retreatment. Further, Dr. Roy indicated that he measures the length of files before he starts root canal procedures, but not afterward. Dr. Roy was the only dentist/endodontist who engaged in the practice of waving dental files in front of a light to cheek for damage.
In contrast, endodontist Dr. Hebert, testified via deposition that the most accurate way to ascertain a broken dental instrument is to measure the length of files before and after root canal procedures. Dr. Hebert testified that in addition to measuring files, she conducts double visual inspections in her practice by having her assistant perform a separate visual inspection throughout the procedure. Dr. Hebert also takes comparison x-rays before and after root canal procedures.
Dr. Joseph G. Shedlarski provided deposition testimony regarding general dentistry and his specific knowledge of Ms. Duracher as her current treating dentist. Dr. Shedlarski stated that when he performs a root canal, he measures the dental files before and after the procedure. He also takes comparison x-rays before and after the procedure. He opined that broken dental file pieces are always evident on x-rays and it is the dentist's responsibility to notice if a dental instrument breaks. Similarly, Ms. Duracher's former general dentist, Dr. May, testified by deposition that when he performs a root canal, he measures the dental files in addition to making visual inspections and taking x-rays before and after the procedure.
Dr. Bryan Paul Bohning also testified at trial. Dr. Bohning is a general dentist and endodontist who served on the medical review panel in this matter. He stated that the panel rendered an opinion in finding that there was no breach of the standard of care by Dr. Roy. However, Dr. Bohning acknowledged that at the time of the panel hearing, the panel was unaware of the pathology report that confirmed the presence of a piece of broken dental file outside the apex of Ms. Duracher's tooth number 14. Dr. Bohning also admitted that the panel had no knowledge that Dr. Roy would eventually admit that the broken file piece was more than likely the result of his retreatment of tooth number 14 on March 18, 2003. The trial court specifically noted in its reasons for judgment that "Dr. Bohning was obviously caught off guard when Dr. Roy admitted leaving the file tip in [Ms. Duracher's] mouth." In contrast to Dr. Shedlarski's testimony, Dr. Bohning testified that broken dental files do not always show up on x-rays and it is not necessary to measure the instruments before and after each root canal. Dr. Bohning opined that visual inspections and x-rays were appropriate methods to determine whether a dental file was broken. Dr. Bohning also testified that the piece of broken file was so small that it would have been difficult to visualize on inspection or x-ray, in direct contrast to the testimony of Drs. Hebert, May, and Westfall, who all stated that they clearly saw an apparent foreign object on the x-ray.
Obviously, the trial court was presented with differing views of the evidence and of the standard of care ordinarily practiced by both general dentists and endodontists regarding the inspection of dental instruments in a root canal procedure. The jurisprudence is well settled that where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Therefore, the trial court's decision to credit the views of Drs. Hebert, Shedlarski, May, and Westfall over that of Drs. Roy and Bohning is not manifestly erroneous. Accordingly, we find the trial court's conclusion that Dr. Roy breached the standard of care was reasonable in this case. Likewise, we find the trial court's decision to place greater weight on Drs. Hebert, Shedlarski and Westfall's opinions regarding causation was within its discretion and reasonable. Dr. Westfall's testimony was particularly strong when he stated that any time you have foreign material in soft tissue like the periodontal ligament, there is an inflammatory process. Dr. Westfall believed the broken piece of file contributed to Ms. Duracher's symptoms in addition to the fact that she simply does not do well with root canals. For these reasons, Dr. Westfall recommended surgery on tooth number 14 and shortly thereafter, on teeth numbers 12 and 13. Similarly, Dr. Hebert testified that any foreign material extruding outside the end of a tooth's root has the potential to create a chronic inflammation or infection process. Dr. Shedlarski agreed that a broken file tip would cause inflammation.
We find no merit to the argument that the trial court erred in awarding damages for injuries to three teeth (teeth numbers 12, 13 and 14) instead of one.[3] Although the piece of broken dental file was located near the root tip of tooth number 14, the evidence supports a finding that Ms. Duracher suffered from a chronic inflammatory process that involved the entire area surrounding tooth number 14, including roots of teeth numbers 12 and 13. Shortly after the surgery on tooth number 14, which included bone replacement, Ms. Duracher endured two other surgeries involving teeth 12 and 13. It was only after Ms. Duracher healed from the three surgeries that she was relieved of her pain and discomfort. Thus, we find the trial court was reasonable in awarding damages based on injuries to all three teeth.
Finally, we find no merit to Dr. Roy and his insurer's contention that the $47,000.00 general damage award for Ms. Duracher's pain and suffering was excessive. The record is replete with evidence that Ms. Duracher suffered constant and severe pain from chronic inflammation after the retreatment root canal in tooth number 14 on March 18, 2003, which resulted in three painful oral surgeries approximately six months later. The trial court has vast discretion in making general damage awards, and an appellate court should rarely disturb such an award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La. 3/22/96), 670 So.2d 1206, 1210. This award does not shock our conscience and we find no abuse of discretion. We therefore affirm the award.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed. Defendants-Appellants, Dr. Charles O. Roy and The Medical Protective Company, are to pay the costs of this appeal.
AFFIRMED.
NOTES
[1] An endodontist is a general dentist that specializes in root canals and diseases/biology of teeth pulp.
[2] The Medical Protective Company was incorrectly identified in the petition and caption of this case as Medical Protective Insurance Corporation.
[3] Dr. Roy strenuously argues that the parties stipulated that only tooth number 14 was at issue at trial. However, the record does not reveal any stipulation limiting damages to one tooth.